**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellant,*

v.

THEODORE ANTHONY CIENFUEGOS,
*Defendant-Appellee.*

No. 05-10201

D.C. No.
CR-03-00662-FJM

OPINION

Appeal from the United States District Court
for the District of Arizona
Frederick J. Martone, District Judge, Presiding

Submitted May 16, 2006*
San Francisco, California

Filed September 8, 2006

Before: Pamela Ann Rymer and Kim McLane Wardlaw,
Circuit Judges, and James V. Selna,** District Judge.

Opinion by Judge Wardlaw

*This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable James V. Selna, United States District Judge for the Central District of California, sitting by designation.

10909

## COUNSEL

Linda C. Boone, Assistant United States Attorney, Phoenix, Arizona, for the plaintiff-appellant.

Martin Lieberman, Phoenix, Arizona, for the defendant-appellee.

## OPINION

WARDLAW, Circuit Judge:

The Government appeals the district court's denial of its motion to order restitution for future lost income to a man-

slaughter victim's estate pursuant to the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A(b)(2)(C). Because restitution for future lost income may be ordered under the MVRA so long as it is not based upon speculation, but is reasonably calculable, we reverse and remand to the district court to redetermine the amount of restitution to be awarded.

# I

On May 24, 2003, Theodore Anthony Cienfuegos drove to an area on the San Carlos Apache Indian Reservation known as the Windmill, an open circular area where a number of local residents had gathered to socialize. Shortly after he arrived at the Windmill, Cienfuegos engaged in an altercation with several individuals. He then got into his car and drove into six vehicles parked around the Windmill, causing the nearby crowd to rapidly disperse. Billie Jean Noline, a registered member of the San Carlos Apache Indian tribe, tripped and fell as she ran to avoid the path of Cienfuegos' vehicle. Cienfuegos ran over Noline with his car, hit a tree, and then backed up and did it again. Noline was taken to the San Carlos Hospital, where she died as a result of the injuries inflicted by Cienfuegos.

A federal grand jury returned a three-count superseding indictment on August 19, 2004, which charged: (1) second degree murder in violation of 18 U.S.C. §§ 1152, 1111; (2) assault with a dangerous weapon in violation of 18 U.S.C. §§ 1152, 113(a)(3); and (3) assault resulting in serious bodily injury in violation of 18 U.S.C. §§ 1152, 113(a)(6). Cienfuegos pleaded guilty on September 22, 2004 to Count Three of the indictment and to involuntary manslaughter, a lesser included offense of Count One. Cienfuegos' plea agreement required him to make restitution, with the total amount to be determined by the court at the time of sentencing.

Before sentencing, on February 2, 2005, the Government moved for restitution for Noline's future lost income pursuant

to the MVRA. It submitted a report from a certified public accountant on February 18, 2005, calculating Noline's lifetime future lost income to be $1,851,134.00. The district court denied restitution for future lost income, reasoning that the complexities associated with determining future lost income belong in a civil action brought by the survivors and not as an adjunct to a federal criminal case. The district court further advised the victim's family to file a civil suit, as the statute of limitations had not yet expired. The district court sentenced Cienfuegos to a term of imprisonment of fifty-one months on each count, to be served concurrently, followed by three years of supervised release. It also ordered Cienfuegos to pay a special assessment of $200.00 and restitution to the victims for funeral and related expenses in the amount of $11,629.87.

## II

We review a restitution order for an abuse of discretion, provided that it is within the bounds of the statutory framework. *See United States v. Phillips*, 367 F.3d 846, 854 (9th Cir. 2004) (as amended). Factual findings supporting a restitution order are reviewed for clear error, *United States v. De La Fuente*, 353 F.3d 766, 772 (9th Cir. 2003), and the legality of a restitution order is reviewed *de novo*, *Phillips*, 367 F.3d at 854.

## III

Cienfuegos first argues that because the Government failed to provide the probation officer with a list of the amounts subject to restitution not later than sixty days prior to sentencing, as was required by 18 U.S.C. § 3664(d)(1), the district court was not compelled to consider the Government's motion to include future lost earnings in the restitution amount. Cienfuegos also points out that, under 18 U.S.C. § 3664(d)(5), if the victim's losses are not ascertainable ten days prior to sentencing, then the prosecution is required to notify the court so that the court can set a date for determining the victim's losses

within ninety days after sentencing. The Government responds that any failure to follow the procedural requirements of section 3664 was harmless error.

**[1]** The Government undisputedly failed to comply with the section 3664 procedures. It submitted its motion for future lost income on February 2, 2005, twenty-one days before the sentencing hearing, and submitted the CPA's calculation of the amount of future lost income on February 18, 2005, five days before sentencing. Because Cienfuegos timely objected to the Government's failure to follow the requirements and procedures of section 3664, we review for harmless error. However, because Cienfuegos fails to demonstrate actual prejudice from the Government's failure to comply with the procedural requirements of section 3664, the only entity to suffer prejudice here was Noline's estate. Therefore, we hold that any error the district court may have made in considering the Government's untimely future lost income motion was harmless. This accords with decisions of the Second, Fourth, Sixth, and Seventh Circuits, which have held that because the procedural requirements of section 3664 were designed to protect victims, not defendants, the failure to comply with them is harmless error absent actual prejudice to the defendant. As the Second Circuit held in *United States v. Zakhary*, 357 F.3d 186, 191 (2d Cir. 2004):

> [T]he purpose behind the statutory ninety-day limit on the determination of victims' losses is not to protect defendants from drawn-out sentencing proceedings or to establish finality; rather, it is to protect crime victims from the willful dissipation of defendants' assets. . . . Mindful of these goals, we have ruled that a district court's failure to determine identifiable victims' losses within ninety days after sentencing, as prescribed by § 3664(d)(5), will be deemed harmless error to the defendant unless he can show actual prejudice from the omission.

*See also United States v. Johnson*, 400 F.3d 187, 198-99 (4th Cir. 2005) (failure to comply with the ten-day limit in section 3664(d)(5) is harmless error absent a showing of prejudice); *United States v. Vandeberg*, 201 F.3d 805, 814 (6th Cir. 2000) (failure to afford defendant an opportunity to be heard as to the proposed amount of restitution within the ninety days prescribed by § 3664(d)(5) is harmless error because "the court provided him ample opportunity to object to the amount thereafter"); *United States v. Grimes*, 173 F.3d 634, 638-39 (7th Cir. 1999) (because intended beneficiaries of section 3664(f)(1)(A) are victims, defendants have no rights under section 3664 and trial court's failure to name all of the victims in the restitution order is not error).

**[2]** Moreover, Cienfuegos was provided the functional equivalent of the notice required under section 3664(d)(5) by the terms of his plea agreement. *See United States v. Dando*, 287 F.3d 1007, 1010 (10th Cir. 2002) ("Defendant . . . received the functional equivalent of the notice required by the statute. Defendant signed a plea agreement in which he acknowledged restitution was mandatory. Although the district court . . . did not establish a date to finalize the restitution amount, the sentence hearing transcript clearly indicates the court recognized restitution was mandatory . . . ."). Therefore, we will not uphold the district court's refusal to order restitution on account of the government's failure to comply with section 3664. *See United States v. Catoggio*, 326 F.3d 323, 329-30 (2d Cir. 2003) (rejecting defendant's argument that because an order of restitution under the MVRA must be entered within 90 days of sentencing, the court should vacate the restitution order without remanding for further proceedings).

**IV**

The parties do not dispute that the MVRA applies to this case and that it makes victim restitution mandatory for Cienfuegos. The only issue in contention is whether the MVRA

permits or requires restitution for future lost income. The Government argues that the district court had a mandatory obligation to order restitution for future lost income. Cienfuegos, on the other hand, argues that restitution for future lost income is neither required nor permitted under the MVRA. Because the plain language of the statute, congressional intent, and federal legal authorities support the conclusion that the MVRA does not per se exclude restitution for lost future income to homicide victims, the district court erred in denying the Government's motion outright.

[3] The plain language of the MVRA contemplates an award of restitution to the victim's estate for future lost income and certainly does not expressly exclude such an award. The MVRA provides:

> (a)(1) Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order . . . that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate.
>
> (b) The order of restitution shall require that such defendant—
>
> . . .
>
> (2) in the case of an offense resulting in bodily injury to a victim—
>
> . . .
>
> (C) reimburse the victim for income lost by such victim as a result of such offense . . . .

18 U.S.C. § 3663A. Cienfuegos argues that Congress's use of the term "reimburse" necessarily imputes a backward-looking

approach to a restitution award because the term "reimburse" is generally understood to mean "paying back" someone for losses already incurred. However, Congress also used the phrase "income lost by such victim as a *result* of such offense." 18 U.S.C. § 3663A(b)(2)(C) (emphasis added). The word "result" is forward-looking. *The New Shorter Oxford English Dictionary* 2570 (1993) defines "result" as "[t]he effect, consequence, issue, or outcome of some action, process, or design." Any victim suffering bodily injury or death necessarily incurs the income lost only after the injury, *i.e.* in the future, as a consequence of the defendant's violent act. Moreover, the term "lost earnings," which is analogous to "income lost," is defined by *Black's Law Dictionary* to include future lost earnings:

> *lost earnings*. Wages, salary, or other income that a person could have earned if he or she had not lost a job, suffered a disabling injury, or died. Lost earnings are typically awarded as damages in personal-injury and wrongful-termination cases. There can be past lost earnings and future lost earnings. Both are subsets of this category, though legal writers sometimes loosely use *future earnings* as a synonym for *lost earnings*. *Cf.* LOST EARNING CAPACITY.

*Black's Law Dictionary* 526 (7th ed. 1999).

**[4]** Furthermore, the MVRA requires lost income to be paid to victims who suffer bodily injury, 18 U.S.C. § 3663A(b)(2)(C), or, in the case of victims who suffer death, to the victim's estate, 18 U.S.C. § 3663A(a)(1). "In the case of a victim who is . . . deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, may assume the victim's rights under this section . . . ." *Id.* § 3663A(a)(2). It would be illogical to assume that the ultimate death of a person who suffered bodily injury eliminates restitution for lost income. To not award restitution for future

lost income would lead to a perverse result where murderers would be liable for markedly less in restitution than criminals who merely assault and injure their victims. Thus, it is plain that the statute allows a representative of the victim's estate or another family member to assume the victim's rights to collect restitution for future lost income; however, under section 3663A(a)(1), the restitution is to be paid to the victim's estate.

Reading the MVRA to exclude restitution for future lost income for homicide victims would conflict with Congress's stated intent to force offenders to "pay full restitution to the identifiable victims of their crimes." S. Rep. No. 104-179, at 12 (1996), *as reprinted in* 1996 U.S.C.C.A.N. 924, 925. The Senate Report states that the purpose of the MVRA is "to ensure that the loss to crime victims is recognized, and that they receive the restitution that they are due" because "[i]t is [ ] necessary to ensure that the offender realizes the damage caused by the offense and pays the debt owed to the victim as well as to society." *Id.* In addition, the statute itself mandates that "[i]n each order of restitution, the court shall order restitution to each victim in the *full amount* of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A) (emphasis added). Only by making restitution for future lost income can the perpetrator of a homicide fully pay the debt owed to the victim and to society. *See, e.g.*, R. Posner, *Economic Analysis of Law* 176-181 (3d ed. 1986) (recovery of future lost income provides efficient incentives to take care by ensuring that the tortfeasor will have to bear the total cost of the victim's injury or death).

Moreover, the legislative history of a recent victims' rights bill, the Scott Campbell, Stephanie Roper, Wendy Preston, Louarna Gillis, and Nila Lynn Crime Victims' Rights Act ("CVRA"), Public Law No. 108-405, 118 Stat. 2260, 18 U.S.C. § 3771, evidences congressional understanding that the MVRA provides for future lost income. The CVRA,

which was signed into law by President Bush on October 30, 2004, recites a comprehensive list of crime victims' rights, including "the right to full and timely restitution as provided in law." 18 U.S.C. § 3771(a)(6). During floor debate on the CVRA, Senator Kyl, one of its primary sponsors, spoke regarding the "broad bipartisan consensus" underlying the CVRA. 150 Cong. Rec. S10910 (daily ed. Oct. 9, 2004). Describing the effects of the bill, Senator Kyl specifically endorsed a decision in the District of Utah in which that court found that the MVRA required restitution for future lost income in homicide cases:

> I would like to turn now to restitution . . . . This section provides the right to full and timely restitution as provided in law. We specifically intend to endorse the expansive definition of restitution given by Judge Cassell in *U.S. v. Bedonie* and *U.S. v. Serawop* in May 2004. This right, together with the other rights in the act to be heard and confer with the government's attorney in this act, means that existing restitution laws will be more effective.

*Id.* at S10911 (citing *United States v. Bedonie*, 317 F. Supp. 2d 1285 (D. Utah 2004), *rev'd on other grounds*, 413 F.3d 1126 (10th Cir. 2005); *United States v. Serawop*, 317 F. Supp. 2d 1285 (D. Utah 2004), *verdict rev'd and case remanded on other grounds*, 410 F.3d 656 (10th Cir. 2005), *restitution award aff'd on remand in later proceeding*, 409 F. Supp. 2d 1356, 1357-58 (D. Utah 2006)).

When it passed the MVRA, Congress presumably was aware of the background of the term "lost income," which is frequently interpreted under wrongful death and survival statutes and state criminal restitution statutes to allow compensation for both past and future lost income. State wrongful death and survival actions generally allow compensation to the victim's estate or the victim's decedents for future lost income,

although the methods of calculating the lost income differ.[1]

---

[1]*See, e.g., Hern v. Safeco Ins. Co. of Ill.*, 125 P.3d 597, 604-05 (Mont. 2005) ("[t]he damages that may be recovered in a survival action include lost earnings from the time of injury to death, the present value of reasonable earnings during the decedent's remaining life expectancy"; "damages under a wrongful death claim will include . . . the reasonable value of the contributions in money that the decedent would reasonably have made for . . . the heirs had she lived"); *Classic Coach, Inc. v. Johnson*, 823 So. 2d 517, 528 (Miss. 2002) (average salary of college graduate was best average to use when calculating future income of decedents in wrongful death action, even though decedents had not yet graduated from college); *Elmer Buchta Trucking, Inc. v. Stanley*, 744 N.E.2d 939, 942-43 (Ind. 2001) (pecuniary loss can be determined based on assistance that decedent would have provided to beneficiaries through money, services, or other material benefits minus the cost of decedent's personal maintenance); *Kiser v. Schulte*, 648 A.2d 1, 4 (Pa. 1994) (measure of damages awarded in survival action include loss of his earning power less personal maintenance expenses from time of death through his estimated working life span); *Mackey v. Irisari*, 445 S.E.2d 742, 751-52 (W. Va. 1994) (parents or siblings of deceased in wrongful death action are not required to be financially dependent upon decedent in order to receive compensation for reasonably expected loss of income of decedent); *Wash. Metro. Area Transit Auth. v. Davis*, 606 A.2d 165, 177-78 (D.C. 1992) (lost earnings may be awarded for death of child, but must be "grounded upon facts specific to the individual whose loss is being calculated"); *Wilcox v. Leverock*, 548 So.2d 1116, 1118 (Fla. 1989) (monies which would have accumulated as result of skill or efforts of decedent are irretrievably lost upon death and are properly recoverable by the estate under Wrongful Death Act, whereas passive income received investments is excluded); *Bryant v. Silverman*, 703 P.2d 1190, 1196 (Ariz. 1985) ("Arizona has a strong policy interest in fully compensating injured plaintiffs to make them whole. Thus, Arizona allows unlimited recovery for . . . lost earnings, and diminished earning capacity."); *Goheen v. Gen. Motors*, 502 P.2d 223, 236-37 (Or. 1972) (evidence of earning capacity is relevant to the jury's determination of economic damages, including claims of loss to an estate in a wrongful death case, but net accumulation of substantial net savings during remainder of life expectancy need not be demonstrated); *Estate of Hendrickson v. Genesis Health Venture, Inc.*, 565 S.E.2d 254, 263 (N.C. Ct. App. 2002) (in order to recover damages for loss of net income of a decedent, plaintiff must offer evidence demonstrating that the decedent was potentially capable of earning money in excess of that which would be required for her support); *see also Restatement (Second) of Torts*

Similarly, wrongful death suits under maritime law and the Federal Tort Claims Act ("FTCA") have permitted recovery for future lost income.[2] State courts also frequently interpret the term "lost income" under criminal restitution statutes to permit restitution for future lost income to be paid to the victim's estate.[3] The words Congress chose should be construed in the light of those prior decisions.

---

§ 924 (1979) ("One whose interests of personality have been tortiously invaded is entitled to recover damages for past or prospective . . . (b) loss or impairment of earning capacity . . . ."); Stuart Speiser & James E. Rooks, Jr., *Recovery for Wrongful Death* § 6:53 (4th ed. 2005) ("The first, and most prevalent, theory used in loss-to-estate statutes is that the damages should represent the present value of the decedent's probable future net earnings.").

[2]*See Sea-Land Servs., Inc. v. Gaudet*, 414 U.S. 573, 584-85 (1974) ("Recovery for loss of support has been universally recognized, and includes all the financial contributions that the decedent would have made to his dependents had he lived. Similarly, the overwhelming majority of state wrongful-death acts . . . have permitted recovery for the monetary value of services the decedent provided and would have continued to provide but for his wrongful death."), *abrogation by statute on other grounds recognized by Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990); *In re Air Crash Disaster Near Cerritos*, 982 F.2d 1271, 1277-78 (9th Cir. 1992) (under FTCA, wrongful death damages are computed under state law; under California law, wrongful death plaintiff may recover lost present and future economic support).

[3]*See, e.g., Koile v. State*, 2006 WL 1838565 at *4-5 (Fla. July 6, 2006) (interpreting the phrase "[r]eimburse the victim for income lost by the victim as a result of the offense" in a Florida restitution statute to authorize restitution for lost future income to a murder victim's estate); *Richardson v. State*, 957 S.W.2d 854, 859 (Tex. Ct. App. 1997) (awarding restitution for future lost income to child of manslaughter victim under Texas statute allowing for reimbursement for "income lost by the victim as a result of the offense"); *State v. Blanton*, 844 P.2d 1167, 1170 (Ariz. Ct. App. 1992) (future lost earnings of homicide victim are economic losses covered by Arizona restitution statute); *State v. Mayberry*, 415 N.W.2d 644, 645-46 (Iowa 1987) (en banc) (restitution permitted to parents of a murder victim for the present value of the projected estate of the victim); *State v. Moriarty*, 742 P.2d 704, 707 (Or. Ct. App. 1986) (holding that restitution in the amount of the homicide victim's projected income is a valid award);

Our holding accords with decisions of the Fifth Circuit, under the MVRA's predecessor, the Victim and Witness Protection Act of 1982 ("VWPA"), 18 U.S.C. § 3663, and the Tenth Circuit. *See United States v. Checora*, 175 F.3d 782, 795-96 (10th Cir. 1999) (finding that victim's sons were victims under the MVRA and had suffered a compensable loss of support, but reversing and remanding decision to order that restitution be paid to Utah Child and Family Services because the court made no finding under section 3663A(a)(2) that the agency served as legal guardian of the two boys or had been appointed as a suitable proxy); *United States v. Razo-Leora*, 961 F.2d 1140, 1146 (5th Cir. 1992) (affirming order that defendant pay $100,000 in lost income to victim's widow under VWPA); *United States v. Jackson*, 978 F.2d 903, 915 (5th Cir. 1992) (holding that the district court has the authority to award future lost income under VWPA, but remanding for further factual findings on victim's losses).[4]

**[5]** We reject Cienfuegos' argument that the district court

---

*cf. Jerome v. Crime Victims Comp. Bd.*, 350 N.W.2d 239, 241-42 (Mich. 1984) (the phrase "loss of support," as utilized in Michigan statute, encompasses, for purposes of restitution, the child care and housekeeping costs claimed by the widower of a murder victim); *Lambert v. Neb. Crime Victim's Reparations Bd.*, 336 N.W.2d 320, 323-24 (Neb. 1983) (holding that the loss of future financial support is a pecuniary loss which is compensable under this Nebraska Crime Victim's Reparations Act).

[4]Several federal district courts also have awarded restitution for future lost income. *United States v. Serawop,* 409 F. Supp. 2d 1356, 1357-58 (D. Utah 2006) (affirming on remand restitution for future lost income to estate of three-month-old homicide victim under MVRA); *United States v. Visinaiz*, 344 F. Supp. 2d 1310, 1313-14 (D. Utah 2004) ("[L]ost income restitution is mandatory for homicide no less than for other violent crimes. To reach any other conclusion would flout the plain language of the MVRA."), *aff'd on other grounds*, 428 F.3d 1300 (10th Cir. 2005); *United States v. Ferranti*, 928 F. Supp. 206, 224 (E.D.N.Y. 1996) (as amended) (awarding future lost income under VWPA to fire department in arson homicide case), *aff'd without discussion of restitution issue sub nom.*, *United States v. Tocco*, 135 F.3d 116 (2d Cir. 1998).

acted within its discretion when, relying on the complexity involved in calculating future lost income, it denied the Government's motion for such restitution. Cienfuegos argues that because the Seventh Circuit in *United States v. Fountain*, 768 F.2d 790, 800-04 (7th Cir. 1985), held that the calculation of future earnings is a difficult problem that "unduly complicates the sentencing process" and is not suitable for resolution in a summary proceeding ancillary to sentencing for a criminal offense, the district court did not abuse its discretion by reasoning similarly. However, Cienfuegos' reliance on *Fountain* is misplaced. First, *Fountain*, *id.* at 802, construed a different statute, the VWPA. That statute set forth a provision, 18 U.S.C. § 3579(d), *recodified as* 18 U.S.C. § 3663(a)(1)(B)(ii), which specifically authorized the court to decline to order restitution if "the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution . . . outweighs the need to provide restitution." The *Fountain* court explicitly relied on this provision in reaching its decision. 768 F.2d at 802. Second, the MVRA made the "complexity exception" inapplicable to crimes of violence. Indeed, the exception currently only applies to offenses against property, offenses violating the Controlled Substances Act, and offenses committed by fraud or deceit. 18 U.S.C. § 3663A(c)(3)(B) (allowing exception only for offenses listed under 18 U.S.C. § 3663A(c)(1)(A)(ii)). The MVRA contemplates that some calculations may be complex, and, accordingly, authorizes the district court to "require additional documentation or hear testimony," *id.* § 3664(d)(4), or to "refer any issue arising in connection with a proposed order of restitution to a magistrate judge or a special master for proposed findings of fact," *id.* § 3664(d)(6).

[6] In addition, under the MVRA the availability of a civil suit can no longer be considered by the district court in deciding the amount of restitution. It provides that "[i]n no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of resti-

tution." *Id.* § 3664(f)(1)(B). The MVRA also precludes duplicative awards by reducing restitution by any amount later recovered as compensatory damages for the same loss by the victim in any federal or state civil proceeding: "Any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in—(A) any Federal civil proceeding; and (B) any State civil proceeding, to the extent provided by the law of the State." *Id*. § 3664(j)(2). Thus, the district court abused its discretion by relying on the perceived complexity of the restitution determination and the availability of a more suitable forum to decline to order restitution for future lost income.

**[7]** Any award of future lost income must not be predicated on speculation or conduct unrelated to the offense of conviction, as such an award would be inconsistent with congressional intent. The accompanying Senate Report stated that "[t]he committee believes that losses in which the amount of the victim's losses are speculative, or in which the victim's loss is not clearly causally linked to the offense, should not be subject to mandatory restitution." S. Rep. No. 104-179, at 19, 1996 U.S.C.C.A.N. at 932. Accordingly, the MVRA provides that the presentence report ("PSR") should contain all of the "information sufficient for the court to exercise its discretion in fashioning a restitution order." 18 U.S.C. § 3664(a). The PSR "shall include, to the extent practicable, a complete accounting of the losses to each victim." *Id.* "After reviewing the [PSR], the [sentencing] court may require additional documentation or hear testimony." *Id.* § 3664(d)(4). In addition, the district court must ensure that the Government has met its "burden of demonstrating the amount of the loss sustained by a victim" and "[a]ny dispute as to the proper amount . . . of restitution shall be resolved by the court by the preponderance of the evidence." *Id.* § 3664(e). Speculative losses are incompatible with the MVRA's statutory scheme because "[o]ne cannot bear the burden of proving the amount of a loss by a preponderance of the evidence when it is no more than possi-

ble that the loss will occur at all." *United States v. Follet*, 269 F.3d 996, 1002 (9th Cir. 2001).

[8] While calculation of future lost income must be based upon certain economic assumptions, the concepts and analysis involved are well-developed in federal law, and thus the district court is not without persuasive analogy for guidance. *See, e.g., Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 533-53 (1983) (outlining method for estimating stream of future earnings and choosing discount rate); *Sutton v. Earles*, 26 F.3d 903, 918-19 (9th Cir. 1994). We therefore reverse the district court's order of restitution and remand to the district court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT HEREWITH.**