# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
       *Plaintiff-Appellee,*

                v.

FU SHENG KUO, aka Fu Shen Kuo,
aka Pakea, aka Zhu Ge,
Translated, Brother Pig,
       *Defendant-Appellant.*

No. 08-10314

D.C. No.
CR 07-00225-
DAE-1

UNITED STATES OF AMERICA,
       *Plaintiff-Appellee,*

                v.

SHENGJI WANG,
       *Defendant-Appellant.*

No. 08-10330

D.C. No.
CR 07-00249-DAE

OPINION

Appeals from the United States District Court
for the District of Hawaii
David A. Ezra, District Judge, Presiding

Argued and Submitted
October 15, 2009—Honolulu, Hawaii

Filed December 3, 2009

Before: Robert R. Beezer, Susan P. Graber, and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Graber

15805

**COUNSEL**

Peter C. Wolff, Jr., Federal Public Defender, Honolulu, Hawaii, and Pamela E. Tamashiro, Honolulu, Hawaii, for the defendants-appellants.

Karen L. Stevens, United States Department of Justice, Civil Rights Division, Washington, D.C., for the plaintiff-appellee.

**OPINION**

GRABER, Circuit Judge:

Defendants Fu Sheng Kuo and Shengji Wang appeal the imposition of restitution following their pleas of guilty to violating 18 U.S.C. § 241, Conspiracy to Violate Civil Rights. Defendants "knowingly and willfully conspired to injure, oppress, threaten, and intimidate [Chinese women] recruited for and engaged in prostitution, in the Territory of American Samoa." As we explain below, restitution for "lost income," 18 U.S.C. § 3663, is not the same as disgorgement of all of Defendants' ill-gotten gains from the victims' forced prostitution. Accordingly, we must vacate the restitution order and remand for further proceedings.

BACKGROUND

From December 1998 through September 2006, Defendants induced women to travel to American Samoa from China,

Taiwan, and Fiji to engage in prostitution for the financial benefit of Defendants. In January 2006, Wang traveled to China and recruited victims Y.H. and J.C. (collectively "the victims") under the pretense that she would employ them to work as cashiers in her grocery store in American Samoa. Wang told them that she would arrange for their travel and immigration documents for a fee of approximately $1,875 each and would also purchase their airline tickets and secure their visas.

Y.H. and J.C. arrived in American Samoa in March 2006. Defendants immediately confiscated their passports and return tickets. The victims were taken to the Bao Lai, a restaurant and brothel owned by Kuo. The Bao Lai was a three-story structure with locks on each exterior door, making it possible to lock all doors from the outside. Wire covered all of the windows and the exterior staircase of the structure. Wire or plywood also covered most of the balcony area.

The victims were locked in and coerced to work at the Bao Lai as prostitutes, ostensibly to repay Defendants for their travel expenses. Defendants threatened to hit or beat the victims if they did not do as they were told. Wang also told the victims that she knew people in China who would hurt their families if they refused to comply. Additionally, the victims were regularly threatened with food deprivation for refusing to work.

From March 7, 2006, through August 30, 2006, Y.H. and J.C. performed prostitution services every night that fishing vessels were in port. Each victim was forced to have various forms of sexual intercourse with a total of 50 to 70 customers. The victims stated that, from the first night on, they suffered pain, bleeding, bruising, and tearing of their vaginas. They also suffered abrasions, bruising, and pain to their legs and back from certain sexual demands of customers. Many of the customers did not wear condoms.

The victims were not paid any money for having sex with customers. Customers paid Wang directly at a rate of approximately $100 to $200 per sex act. Wang received 60% of the earnings, supposedly to pay the victims' airfare and room and board, while the remaining 40% went to Kuo. Defendants told the victims that their debt was increasing and had reached $6,000.

After several failed attempts to escape, J.C. successfully cut the wire mesh around her bedroom window, removed the wooden frame, and rolled the wire mesh to create an opening large enough to crawl through. Y.H. used a rope and successfully climbed down the three stories. J.C. followed but slipped and fell to the ground, hurting her head, ankle, arms, hands, and back. The victims were picked up by a taxi driver, who dropped them off in a nearby village. In the village, they met a store owner who spoke Chinese; they explained to him that they had been kept in captivity at the Bao Lai and forced to work as prostitutes. The store owner reported the matter to the police, and the victims were taken to the police station. A Chinese translator assisted the victims in providing a statement to the police.

After the police interview, the victims were treated for their injuries at a hospital. The victims had developed health problems such as anxiety attacks, chest pains, vomiting, ulcers, and suicidal ideations. J.C. received treatment that night for pain, bruising, and swelling of her left foot; neck and lower back pain; contusion to her forehead; and multiple abrasions to her hands, wrists, elbows, and forearms as a result of her fall from the Bao Lai balcony.

Y.H. reported to authorities that the injuries she sustained have rendered her unable to bear a child. She also reported excruciating pain and suffering. Y.H. has attempted suicide on numerous occasions and suffers from constant nightmares. She worries frequently that Kuo will get others to kill or harm members of her family in China.

J.C. reported that she suffers from constant foot and lower back pains, as well as sleeplessness. She also is suicidal and worries that Kuo will kill her family and take revenge on her when he is released from prison.

Defendants were arrested shortly after the victims made their escape. Following Defendants' arrests, police questioned Kuo's wife, Kueiling Chen. After being questioned, Chen and a former employee returned to the Bao Lai and collected all of Wang's accounting documents pertaining to the prostitution business, including records, calendars, and notes showing customers' names and prostitution proceeds. Acting on Kuo's orders, they then burned the documents behind Chen's home.

Kuo and Wang appeared separately before two different United States magistrate judges; each pleaded guilty to a single-count information, pursuant to a plea agreement. The information charged each Defendant with knowingly and willfully conspiring to injure, oppress, threaten, and intimidate persons in the free exercise and enjoyment of the rights and privileges secured to them by the Constitution and laws of the United States, that is, the right to be free from involuntary servitude secured by the Thirteenth Amendment to the United States Constitution, all in violation of 18 U.S.C. § 241.

The district court imposed terms of incarceration and entered judgment against Defendants on January 16, 2008. On February 29, 2008, the government filed a motion for restitution. Kuo filed a response, which Wang joined. The government then filed a supplemental motion in support of restitution pursuant to 18 U.S.C. § 1593, an inapplicable statute. On March 25, 2008, the government filed an amended motion for restitution under 18 U.S.C. § 3664, and Defendants subsequently filed individual responses.

On April 30, 2008, the district court granted in part and denied in part the amended restitution motion, ordering the distribution of $4,226 seized during Defendants' arrests but

declining to impose the additional amount requested by the government due to a lack of supporting documentation and discernible reasoning for the amount requested. The district court gave the government another opportunity to move for restitution.

On May 9, 2008, the government filed a renewed restitution motion, which the district court granted on June 30, 2008. The district court held that the victims were entitled to restitution in the amount of the average customer charge for each sex act multiplied by the total number of sex acts performed. The court determined that the average charge was $170 per act and held that Y.H. was entitled to $8,500 ($170 x 50 acts) and J.C. was entitled to $11,050 ($170 x 65 acts). The court, however, further held that "these amounts, reflecting the victims' *total* losses, should therefore be offset by the respective portions of the seized $4,226." The court therefore ordered that Y.H. shall be awarded $6,387 ($8,500 - $2,113 = $6,387) and J.C. shall be awarded $8,937 ($11,050 - $2,113 = $8,937). Defendants timely appeal.

## STANDARDS OF REVIEW

"We review de novo the legality of a restitution order and, if the order is within statutory bounds, we review the amount of restitution for abuse of discretion." *United States v. Peterson*, 538 F.3d 1064, 1074 (9th Cir. 2008) (citing *United States v. Phillips*, 367 F.3d 846, 854 (9th Cir. 2004)). We review the district court's underlying factual findings for clear error. *United States v. Matsumaru*, 244 F.3d 1092, 1108 (9th Cir. 2001). Generally, "we review a district court's valuation methodology *de novo*." *United States v. Lomow*, 266 F.3d 1013, 1020 (9th Cir. 2001). Nevertheless, we review only for plain error when the defendant failed to object to the legality of the valuation method in the district court. *United States v. Bright*, 353 F.3d 1114, 1120 (9th Cir. 2004). Kuo did not object in district court to the valuation method. Wang asserted, without citation to authority, only that the govern-

ment's methodology "would have [the district court] calculate and condone restitution based upon acts of prostitution." Because Kuo did not disagree with the court's methodology, contrary to his arguments on appeal, we review his argument for plain error. We need not decide whether Wang's cursory objection in the district court entitles her to de novo review of the valuation method because, as we explain below, we vacate the restitution order in relevant part under the more deferential plain error standard.

## DISCUSSION

A. *The district court imposed restitution at sentencing.*

Defendants first argue that the district court did not order restitution at sentencing and thus lacked authority to enter post-judgment orders of restitution. We read the record differently.

During the sentencing hearing for Kuo, the court stated before imposing sentence: "The court is not going to impose a fine here, again, because any funds that the defendant may have the court will place to the benefit of the victims under the victim restitution laws." During the first half of Wang's sentencing hearing, before she was sentenced, the prosecutor confirmed with the court that the government had 60 days within which to file a motion for restitution. When announcing Wang's sentence, the court then said that it "is not going to impose a fine because the defendant is going to be compelled to assist to pay for certain enumerat[ed] victim restitution matters which the court sees [as] more important in this case." The district court further stated that the government's motion for restitution "will be filed and the government is given leave to file that within the appropriate statutory time."

[1] Defendants argue that the foregoing statements "merely reflect the court's intention to order restitution, but do not actually *announce* that Mr. Kuo and Ms. Wang must make

restitution as part of their sentences." We reject Defendants' cramped reading of the colloquy. The court plainly expressed its inclusion of restitution as a part of the pronouncement of sentence.

**[2]** Defendants further argue that the district court did not order restitution at sentencing because the written judgment does not reflect it. On the judgment form, the district court did not check the box showing that restitution was ordered and that the amount would be determined at a later time. But in this circuit, "[w]here the oral pronouncement of a defendant's sentence is unambiguous, but differs from the written sentence, the oral sentence controls." *United States v. Garcia*, 37 F.3d 1359, 1368 (1994) (citing *United States v. Hicks*, 997 F.2d 594, 597 (9th Cir. 1993)). Here, the district court unambiguously expressed that Defendants would have to pay restitution. The oral pronouncement of sentence ordering restitution is controlling.

B.    *The district court properly ordered restitution despite delay.*

Defendants next aver that the district court erred by failing to quantify the victims' losses in a timely manner. We are not persuaded.

Title 18 U.S.C. § 3664(a), titled "Procedure for issuance and enforcement of order of restitution," provides in pertinent part:

> For orders of restitution under this title, the court shall order the probation officer to obtain and include in its presentence report, or in a separate report, as the court may direct, information sufficient for the court to exercise its discretion in fashioning a restitution order. The report shall include, *to the extent practicable*, a complete accounting of the losses to each victim, any restitution owed pursuant

to a plea agreement, and information relating to the economic circumstances of each defendant.

(Emphasis added.) Additionally, 18 U.S.C. § 3664(d)(5) expressly contemplates that the necessary information may not be available by the time the court imposes sentence:

> If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing.

Defendants' sentences were imposed on January 16, 2008, so the 90-day period to which § 3664(d)(5) refers ended on April 15, 2008. The court granted restitution in part on April 30, 2008, and filed a final order granting restitution on June 30, 2008. Thus, the court exceeded the 90-day window described by § 3664(d)(5).

**[3]** But our precedent instructs that "the failure to comply with [the procedural requirements of section 3664] is harmless error absent actual prejudice to the defendant." *United States v. Cienfuegos*, 462 F.3d 1160, 1163 (9th Cir. 2006). That principle follows because "the procedural requirements of section 3664 were designed to protect victims, not defendants." *Id.* Specifically, " 'the purpose behind the statutory ninety-day limit on the determination of victims' losses is not to protect defendants from drawn-out sentencing proceedings or to establish finality; rather, it is to protect crime victims from the willful dissipation of defendants' assets.' " *Id.* (alteration omitted) (quoting *United States v. Zakhary*, 357 F.3d 186, 191 (2d Cir. 2004)).

**[4]** Here, Defendants received oral notice at sentencing that they would be ordered to pay restitution. *See id.* (holding that there was no actual prejudice where the defendant has "the

functional equivalent of the notice required"). Defendants have made no showing of prejudice occasioned by the minimal delay in this case. As a result, their contention that the district court imposed restitution too late must fail.

C. *The district court plainly erred in calculating restitution.*

Defendants argue that the district court used an improper method of calculating the amount of restitution. As discussed above, because Defendants did not raise this argument before the district court, we review for plain error. Plain error is "(1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Cotton*, 535 U.S. 625, 631 (2002) (brackets, citation, and internal quotation marks omitted).

**[5]** Defendants stand convicted of violating 18 U.S.C. § 241. Accordingly, the district court was authorized to impose restitution under 18 U.S.C. § 3663. *See* 18 U.S.C. § 3663(a)(1)(A) ("The court, when sentencing a defendant convicted of an offense under this title, . . . may order . . . that the defendant make restitution to any victim of such offense . . . ."); *see also id.* § 3556 ("The court, in imposing a sentence on a defendant who has been found guilty of an offense . . . may order restitution in accordance with section 3663."). When imposing restitution under § 3663, the court must consider "the amount of the loss sustained by each victim as a result of the offense." *Id.* § 3663(a)(1)(B)(i)(I). We have emphasized that "the amount of restitution under [§ 3663] is limited to the victim's *actual losses*." *United States v. Bussell*, 504 F.3d 956, 964 (9th Cir. 2007), *cert. denied*, 129 S. Ct. 40 (2008). "[A]ctual loss for restitution purposes is determined by comparing what actually happened with what would have happened if the defendant had acted lawfully." *Id.* (brackets and internal quotation marks omitted).

The district court rejected the calculation method required by § 3663. It stated that, "due to the nature of the illegal business in which the victims were forced to participate, there is no way to calculate restitution here based on a comparison between what actually happened with what would have happened had [Defendants] acted lawfully." Instead, the district court determined the amount of restitution by calculating Defendants' ill-gotten gains via their exploitation of the victims. In particular, the district court adopted the following calculation, which had been proposed by the government: (average price of each commercial sex act) x (average estimated number of commercial sex acts performed) = restitution. The district court found that the average price for each sex act was $170. It then multiplied $170 by the estimated number of sex acts each victim performed and held "that the following restitution amounts are warranted: (1) for Y.H., $8,500 ($170 x 50 acts); (2) for J.C., $11,050 ($170 x 65 acts)." Pursuant to its order filed April 30, 2008, the district court held further that the $4,226 seized at the time of Defendants' arrests should be distributed equally to J.C. and Y.H. and credited toward the full amount of restitution.

**[6]** The district court derived its calculation method, which the government had proposed, from 18 U.S.C. § 1593—the restitution provision in the Trafficking Victims Protection Act of 2000 ("Trafficking Act"), Pub. L. No. 106-386, 114 Stat. 1464. Section 1593 directs that the district court's calculation shall include the victim's actual losses "and shall *in addition* include the greater of *the gross income or value to the defendant of the victim's services or labor* or the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act." 18 U.S.C. § 1593(b)(3) (emphases added). In other words, the Trafficking Act mandates restitution that includes a defendant's ill-gotten gains. Section 1593 applies, however, *only* to cases in which a defendant has been convicted of an offense under the Trafficking Act. *Id.* § 1593(a).

**[7]** But Defendants were not convicted of an offense under the Trafficking Act; they were convicted of a violation of 18 U.S.C. § 241. The restitution provisions of the Trafficking Act simply do not apply. Instead, the restitution provisions of § 3663 apply. And the calculation methods under § 3663 do not include a defendant's ill-gotten gains.

For its part, the government does not dispute any of the foregoing analysis. Instead, it argues on appeal that, "[a]lthough Section 1593 does not mandate restitution for violations of 18 U.S.C. [§ ] 241, it was reasonable in this case, where defendants engaged in the same sort of behavior, to look to Section 1593 for guidance." We disagree.

**[8]** Congress specified criminal penalties for violations of 18 U.S.C. § 241, which include restitution "limited to the victim's *actual losses*." *Bussell*, 504 F.3d at 964. Congress specified different criminal penalties for violations of the Trafficking Act, which include restitution for a defendant's ill-gotten gains.[1] 18 U.S.C. § 1593(b)(3). If the government wanted to seek penalties under the Trafficking Act, it was required to prosecute Defendants under the Trafficking Act. Having chosen to prosecute Defendants under 18 U.S.C. § 241, it may seek only the penalties authorized by law for violations of that crime. The government has cited no authority—and we know of none—for the proposition that the district court may exceed its statutory authority simply because of the government's assertion that "defendants engaged in the same sort of behavior" as a crime of which Defendants were not convicted.

**[9]** Because the district court rejected the correct calcula-

---

[1]The government does not dispute that a defendant's ill-gotten gains are different from, and can exceed, the victim's actual losses. For instance, an enslaved victim forced to work as a drug mule may smuggle millions of dollars' worth of drugs for the defendant. The value of that service to the defendant easily might exceed the victim's actual losses.

tion method (under § 3663) in favor of an incorrect method (under § 1593), the district court erred. Moreover, we hold that the district court's error was "plain," because the statutes are clear and because the government openly admitted that its proposed methodology derived from the wrong restitution statute. *See United States v. Tuyet Thi-Bach Nguyen*, 565 F.3d 668, 677 (9th Cir. 2009) ("An error is plain when it is 'clear' or 'obvious' under the law."). Finally, we hold that the error affected Defendants' substantial rights and affected the fairness, integrity, or public reputation of the judicial proceedings. The government did not present evidence—and the district court did not make findings—of the victims' actual losses, as required by § 3663. *See Bussell*, 504 F.3d at 964 (holding that the amount of restitution is "limited to the victim's *actual losses*"); *United States v. Joyner*, 201 F.3d 61, 81 (2d Cir. 2000) (holding that a district court's failure to make the necessary findings related to a restitution order constitutes plain error); *United States v. Smith*, 156 F.3d 1046, 1057 (10th Cir. 1998) (holding that, where the government has not "present[ed] evidence at the hearing concerning the appropriate amount of restitution[,] . . . [the] imposition of the [restitution] order constitutes plain error"). We therefore cannot tell whether the amount of restitution imposed by the district court exceeded the victims' actual losses.[2] *See United States v. James*, 564 F.3d 1237, 1243 (10th Cir. 2009) ("[A] district court may not order restitution in an amount that exceeds the actual loss caused by the defendant's conduct, which would amount to an illegal sentence constituting plain error."); *United States v. Austin*, 479 F.3d 363, 373 (5th Cir. 2007)

---

[2]We recognize that the victims' actual losses might meet or exceed the amount of the district court's original restitution order. But we cannot tell on this record. Because the original restitution amount might exceed the victims' actual losses, we must hold that the error affected Defendants' substantial rights and affected the integrity of the judicial proceeding. On remand, the district court must use a calculation method authorized by § 3663, and restitution must be limited to the victims' actual losses. But § 3663 does not otherwise impose a maximum restitution amount that may be ordered, and we impose none.

("When a defendant is ordered to pay restitution in an amount greater than the loss caused, the error affects substantial rights as well as the fairness and integrity of the judicial proceeding."); *United States v. Alburay*, 415 F.3d 782, 789 (7th Cir. 2005) (holding that restitution in the amount of $1,750,000 constituted plain error because the actual loss was only $1,725,000); *see also United States v. Diaz*, 245 F.3d 294, 312 (3d Cir. 2001) (holding that a district court cannot order "restitution in amounts that will result in the payment to the victim of an amount greater than the victim's loss"); *United States v. Royal*, 100 F.3d 1019, 1033 (1st Cir. 1996) (holding that no plain error occurred where any hypothetical minor error in calculating total loss would not have affected the ultimate amount of restitution, because the court imposed only $30,000 of restitution after calculating a total loss of $500,000).

**[10]** We therefore vacate the restitution order and remand the case to the district court on an open record to allow recalculation of restitution under 18 U.S.C. § 3663. *See United States v. Matthews*, 278 F.3d 880, 885 (9th Cir. 2002) (en banc) ("[A]s a general matter, if a district court errs in sentencing, we will remand for resentencing on an open record— that is, without limitation on the evidence that the district court may consider."). On remand, the district court would be acting within its discretion to include restitution for the victims' bodily injury under 18 U.S.C. § 3663(b)(2)(C); restitution for the $1,875 that each victim paid to Defendants to be brought to American Samoa, *see United States v. English*, 92 F.3d 909, 917 (9th Cir. 1996) (affirming the district court's order of restitution for an amount representing nine investors' aggregated losses, including the investors' initial payments, in a fraudulent investment scheme); and any other restitution amount, such as lost wages for legitimate employment, authorized by § 3663. But the district court may not order restitution to reflect Defendants' ill-gotten gains.

We understand the district court's desire to make Defendants disgorge everything that they gained by cruelly exploit-

ing these victims. But restitution for a violation of § 241 is limited by the provisions of § 3663; other means (such as fines) are available to accomplish disgorgement. The victims also may choose to sue Defendants civilly for damages, including but not limited to damages to help compensate them for their extreme pain and suffering. With regard to restitution, however, the court and the victims are bound to the government's choice to pursue a civil rights prosecution rather than a human-trafficking prosecution.

D.   *Sufficiency of the evidence in support of restitution.*

Defendants also claim that the evidence presented by the government in support of its motion for restitution is not sufficient to support an order of restitution. *See* 18 U.S.C. § 3664(a) (listing potential items of information required by the district court before imposing restitution). They contend that the victims' and law enforcement officers' affidavits contained unsubstantiated conclusions and imprecise accusations.

In ordering restitution, the district court relied on several different pieces of evidence. The victims submitted affidavits describing the harms that they suffered and estimating the number of sex acts that they were forced to perform during the period in question, and the government submitted evidence from four independent sources to support its estimate of the price that Defendants charged for each sex act.

[11] Because we hold that the district court erred by calculating restitution using the market value of the prostitution services that the victims performed, we need not decide whether sufficient evidence supported that calculation. *Cf. Hughey v. United States*, 495 U.S. 411, 422 (1990) (holding that the district court used the wrong legal standard when calculating restitution and remanding for further proceedings, without discussing sufficiency of the evidence under the wrong standard). Of course, some of the evidence on which the district court relied may remain relevant when it recalcu-

lates restitution to reflect the victims' actual losses. In that regard, "victim affidavits will generally provide sufficient, reliable evidence to support a restitution order." *United States v. Waknine*, 543 F.3d 546, 557 (9th Cir. 2008).

Moreover, it is inappropriate for Defendants to contest the sufficiency of the government's evidence in support of restitution to the extent that other documentary evidence that Defendants' associates deliberately destroyed may have contained information relevant to the restitution calculation. In particular, the district court found that, after Defendants' arrests, Kuo's wife returned to the Bao Lai and, along with a former employee, destroyed all of the accounting documents of the prostitution business. These records were certainly relevant to determining the amount of restitution under the method the district court incorrectly used, and some may also be relevant to establish the victims' actual losses under the proper methodology.

## CONCLUSION

We affirm the district court's restitution order insofar as it held that the $4,226 seized from Defendants during the execution of the search warrant may be used to pay restitution to the two victims in equal parts; Defendants have not challenged that portion of the order. We vacate the portion of the order that calculates the total amounts of restitution and remand for a new calculation consistent with this opinion.

AFFIRMED in part; VACATED and REMANDED in part.