**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. ROOSEVELT ANDERSON, JR., *Defendant-Appellant*. | No. 12-10344 D.C. No. 5:09-cr-01015-EJD-1 OPINION |

Appeal from the United States District Court
for the Northern District of California
Edward J. Davila, District Judge, Presiding

Argued and Submitted
June 11, 2013—San Francisco, California
Submission vacated July 15, 2013
Resubmitted December 12, 2013

Filed December 19, 2013

Before: Ferdinand F. Fernandez and Consuelo M. Callahan
Circuit Judges, and Sarah S. Vance, Chief District Judge.[*]

Opinion by Judge Callahan

---

[*] The Honorable Sarah S. Vance, Chief District Judge for the U.S. District Court for the Eastern District of Louisiana, sitting by designation.

**SUMMARY**\*\*

**Criminal Law**

The panel affirmed a conviction for criminal copyright infringement, but vacated the restitution order and remanded.

The panel held that a jury instruction on willfulness was flawed but did not rise to the level of plain error, and that evidence of uncharged acts was properly admitted as intrinsic to the charged conduct.

The panel held that the district court erred in failing to award restitution reflecting the victim's actual loss, which consisted of the victim's lost profits on sales of authentic copies that would have taken place if not for the defendant's conduct. The panel remanded for the district court to reconsider restitution on an open record.

**COUNSEL**

John J. Jordan (argued), San Francisco, California, for Defendant-Appellant.

Melinda Haag, United States Attorney; Barbara J. Valliere, Assistant United States Attorney, Chief, Appellate Division; Susan B. Gray (argued), Assistant United States Attorney, San Francisco, California, for Plaintiff-Appellee.

---

\*\* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

CALLAHAN, Circuit Judge:

Roosevelt Anderson, Jr., appeals his conviction for criminal copyright infringement under 17 U.S.C. § 506(a)(1)(A) and 18 U.S.C. § 2319(b)(1). Anderson contends that the district court erred: (1) by giving an incorrect jury instruction on willfulness; (2) by allowing the government to introduce evidence of uncharged acts of infringement; and (3) in calculating restitution. Applying the willfulness standard for criminal copyright cases as recently clarified in *United States v. Liu*, 731 F.3d 982 (9th Cir. 2013), we conclude that the jury instruction was flawed but did not rise to the level of plain error. We also find that the evidence of uncharged acts was properly admitted as intrinsic to the charged conduct, and accordingly, we affirm Anderson's conviction. Nonetheless, consistent with *United States v. Fair*, 699 F.3d 508 (D.C. Cir. 2012), and *United States v. Chalupnik*, 514 F.3d 748 (8th Cir. 2008), we conclude that the district court erred in failing to award restitution reflecting the victim's actual loss, which consisted of the victim's lost profits on sales of authentic copies that would have taken place if not for Anderson's conduct. Consequently, we vacate the restitution order and remand to the district court to reconsider restitution on an open record.

I

Anderson was a Las Vegas cab driver who also dabbled in photography and electronics repair. At some point, he decided to start selling software. He initially considered contacting Adobe Systems, Inc. ("Adobe") to see if he could work out a "financial deal" with it. Lacking any funding for

such a deal, however, he decided to take an "alternative" route. Using the moniker "Moneyworld123," Anderson began a "one-man" operation selling Adobe software online through the price comparison website Pricegrabber, while handling payments through the Google Checkout processing service. He also advertised software on his own website, Anderson9000.com.

The discs containing the software Anderson sold were consumer-grade "burned" discs with generic labels. Anderson's advertisements and the documents accompanying the discs referred to the software as "full" or "complete" "OEM" (meaning "original equipment manufacturer") products. The accompanying documents also indicated that Moneyworld123 would make "plug-ins" (i.e., optional software upgrades providing improved software functionality) available to the customer if the customer would rate Moneyworld123 on Pricegrabber. The discs also contained a "terms and conditions" document, which stated that the software was only to be used for "archival purposes" or as a "backup" copy. The terms and conditions were not printed out for the customers, however, and the customers could (and did) install the software without viewing them.

In order to activate legitimate Adobe software, a customer must enter a 24-digit serial number (or "product key") provided by Adobe which it generates using an algorithm. The software first confirms that the number is in the correct format and then confirms that it is a valid number with Adobe. However, counterfeiters can use "key generators" to create serial numbers that match Adobe's algorithm and disable or bypass the function requiring the software to confirm that the number is valid. Anderson's software was packaged with serial numbers written in permanent marker.

Based in part on the inauthentic appearance of the product, two customers contacted Anderson and demanded refunds. One bluntly told Anderson: "You are pirating software and marketing it as if you are not doing something illegal. I have no doubt that this is not new software and that you are not operating under legal means." Anderson provided the requested refunds.

Anderson's operation eventually attracted Adobe's attention. An Adobe investigator purchased a copy of Photoshop CS3 Extended from Anderson using Pricegrabber and Google Checkout. The investigator purchased the software, which had a retail price of $999, from Anderson for $262.90, including shipping and handling. Adobe then contacted Christopher Morris, a U.S. Postal Inspector, who subpoenaed records from Pricegrabber and Google, as well as records from email addresses related to the Pricegrabber and Google accounts. Morris eventually concluded that Anderson controlled the accounts. The records showed that Anderson had sold 209 copies of Photoshop CS3 and 30 copies of Photoshop CS3 Extended from February 2008 through February 2009. During that time period, Anderson made approximately 350 total software sales, totaling $70,551.

Morris subsequently found Anderson9000.com and arranged a purchase of Adobe Fireworks after exchanging voicemails with an individual identifying himself as "J." Morris paid $131, including shipping and handling, for the product, which had a retail price of $299. Surveillance cameras captured images of Anderson checking the post office box listed as the return address.

Morris subsequently set up another sale using the same process and arrested Anderson. Anderson then consented to

a search of the rental car that he drove to the post office. In the car, Morris found a number of blank discs, two copies of Photoshop CS3, various discs with Adobe plug-ins, a key generator disc, and discs with various other Adobe programs.

Anderson was subsequently charged with criminal copyright infringement based on his sales of Photoshop CS3 and Photoshop CS3 Extended. At trial, Anderson admitted to selling the software but explained that, based on his internet research, he believed that OEMs were companies that resell other companies' products under their own names, and that "OEM" referred to backup copies. He said that he pulled the information for the terms and conditions from the Copyright Act (specifically, 17 U.S.C. §§ 106, 117[1]) and from other websites selling OEM software. He explained that he provided customers with serial numbers using a key generator because customers frequently misplace their original serial numbers.

---

[1] In relevant part, § 117(a) provides:

> Notwithstanding the provisions of section 106, it is not an infringement for the owner of a copy of a computer program to make or authorize the making of another copy or adaptation of that computer program provided
> . . .

> (2) that such new copy or adaptation is for archival purposes only and that all archival copies are destroyed in the event that continued possession of the computer program should cease to be rightful.

The statute further provides that any copies made in such a manner may only be "leased, sold, or otherwise transferred, along with the copy from which such copies were prepared, . . . as part of the lease, sale, or other transfer of all rights in the program." § 117(b).

Anderson conceded that he did not mention that the software was for backup or archival purposes on Pricegrabber and Anderson9000.com. He also conceded that he continued to sell the software even after his customers told him that it looked illegal. He was also aware that some customers were installing the software and using it, as opposed to merely retaining it for backup purposes, but he did not change his practices. Several customers testified that they would not have purchased Anderson's software if they had known it could be used only for backup purposes.

A representative from Adobe testified that there was no market for backup copies of Adobe software and that Adobe does not authorize anyone to make backup copies for customers. He said that in an OEM deal, Adobe sells a copy of software at a discounted rate to a hardware purchaser. He said that OEM software is not sold separately from a piece of hardware and "OEM" does not refer to backup copies. He confirmed that the copy of CS3 Extended that the investigator purchased and the copy of Fireworks that Morris purchased from Anderson were unauthorized. He also stated that Adobe had no relationship with Anderson and did not authorize him to sell its products.

After a four-day trial, the jury found Anderson guilty. The district court sentenced him to 24 months of imprisonment and two years of supervised release. It further ordered him to pay a $100 special assessment and $247,144 in restitution to Adobe. Anderson now appeals, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## II

Anderson first contends that the district court erred because its jury instruction on the criminal copyright willfulness standard improperly suggested that the jury could convict him even if he did not have the specific intent to violate the law.

## A

Prior to trial, both parties submitted proposed jury instructions. The government's set of proposed instructions included the following instruction, titled "Willfully – Defined":

> The government must prove that the defendant willfully infringed a copyrighted work. An infringement was willful when (1) the defendant engaged in acts that infringed the copyrights, and (2) knew that those actions may infringe the copyrights [or acted with reckless disregard for, or willful blindness to the copyright holder's rights].[2]

Among other supporting authorities, the government cited the *Ninth Circuit Manual of Model Civil Jury Instructions* § 17.27 (2007). Anderson proposed the following competing explanation of "willful" infringement:

> A copyright is proven to be infringed "willfully" when the defendant voluntarily

---

[2] The bracketed language appears as it did in the government's proposed instruction.

and intentionally violated a known legal duty. [*United States v. Moran*, 757 F. Supp. 1046, 1050–51 (D. Neb. 1991) (citing *Cheek v. United States*, 498 U.S. 192, 201 (1991)).] To find him guilty, you must find Mr. Anderson acted with a motive to violate that which the statute protects; something more is required than the doing of the act proscribed by the statute. [*Screws v. United States*, 325 U.S. 91, 101 (1945).] Infringement of a copyright held by Adobe requires a finding that Mr. Anderson acted with the purpose of depriving Adobe of the interest protected by its copyright. [*United States v. Heilman*, 614 F.2d 1133, 1137 (1980); *accord Screws*, 325 U.S. at 101.] Mr. Anderson must have known his actions constituted a copyright infringement in order for you to find he acted "willfully." [*Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335 & n.3 (9th Cir. 1990).] If you find that Mr. Anderson did not know his actions were infringing the rights of Adobe, then you must find him not guilty.[3]

Anderson objected to the government's instruction, noting that there was no model instruction and that the government was relying on civil authority. The government argued that Anderson's instruction was "not an accurate statement of the requirement of willfulness." In particular, the government

---

[3] In an explanatory section of his submission, Anderson provided the bracketed case citations for the court's reference but did not suggest incorporating them into the body of the instruction to be given to the jury.

indicated that it was concerned that Anderson's instruction added additional undefined elements, such as "motive," "known legal duty," and "purpose." It argued that its instruction accurately stated the law, "which is that the defendant knew what he was doing would violate Adobe's copyright."

The court found that Anderson's instruction did seek to add additional factors that were likely irrelevant. It proposed adding the last two sentences of Anderson's instruction to the end of the government's instruction. Anderson's counsel then stated: "Okay, I'll accept that." The government agreed that the penultimate sentence was "an accurate statement of the government's burden" but argued that the last sentence was unnecessary and might lead to confusion about what the jury had to find. The court agreed that the last sentence would be left out of the instruction and left for the parties to address at closing argument. Anderson's counsel responded, "Okay." The court asked Anderson's counsel if he wanted the sentence as a stand-alone instruction, but he responded: "As much as I would love to have a stand-alone instruction, it makes sense to keep it with the willfully defined." The parties also agreed that the bracketed language in the government's instruction regarding recklessness and willful blindness was not necessary based on the evidence in the record.

The final instruction, as read to the jury, was:

> The government must prove that the defendant willfully infringed a copyrighted work. An infringement was willful when the defendant engaged in acts that infringed the

copyrights and knew those actions may infringe the copyrights.

Mr. Anderson must have known his actions substituted [sic[4]] a copyright infringement in order for you to find he acted willfully.

The district court asked both parties if they objected to the reading of the instructions, and both responded, "No." Written copies of the instructions were also provided to the jury.

On the second day of deliberations, the jury sent a note stating: "A juror has looked at the word willful[] in a dictionary and shared that it means deliberate. Please advise." In response, the court sent a note back pursuant to the parties' agreement indicating that the jurors were instructed not to do any research and referring them to the willfulness instruction. Twenty minutes later, the jury indicated that it had reached a unanimous verdict.

B

Anderson contends that: (1) de novo review applies; (2) the district court improperly rejected his proposed willfulness instruction and adopted an instruction that misstated the law; and (3) the error affected the jury's verdict.

---

[4] The court obviously meant "constituted." From the record, we cannot determine whether this was a transcription error or the judge misspoke when reading the instructions.

1

The parties dispute whether a de novo or plain error standard of review applies here. We generally review whether a jury instruction omits or misstates an element of a crime on a de novo basis. *United States v. Kilbride*, 584 F.3d 1240, 1247 (9th Cir. 2009). "However, in the absence of a timely objection to the jury instructions, we review for plain error." *Id.* (internal quotation marks omitted). In order to find plain error, we must "find (1) an error that is (2) plain and (3) affects substantial rights." *Id.* Even where these conditions are met, however, "we may only exercise our discretion to correct the error if it seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.*

Under Federal Rule of Criminal Procedure 30(d), a "party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate." We have held that Rule 30 "requires a defendant to state with adequate specificity the grounds for an objection to a jury instruction before the jury retires, and that a defendant's mere proposal of an alternate instruction does not satisfy Rule 30's standard of specificity." *United States v. Hofus*, 598 F.3d 1171, 1175 (9th Cir. 2010) (internal quotation marks omitted). An objection to an instruction on a different ground is not sufficient to preserve de novo review. *See United States v. Peterson*, 538 F.3d 1064, 1071 (9th Cir. 2008).

Here, Anderson submitted an alternative willfulness instruction that the court largely rejected. However, after the court discussed the issue with counsel, Anderson's attorney

said: "Okay, I'll accept that."   Moreover, despite having multiple opportunities to do so, Anderson's attorney did not specifically object to the court's formulation of the final willfulness instruction, which was a combination of the government's instruction and Anderson's instruction. Indeed, rather than objecting, Anderson's attorney explicitly acquiesced to it.  Accordingly, plain error review applies.[5]

2

Under 17 U.S.C. § 506(a)(1)(A), a person is guilty of criminal copyright infringement if he or she "willfully" infringes a copyright for the purpose of commercial advantage or private financial gain.  We do not have a model instruction explaining the "willfulness" requirement in criminal copyright infringement cases. However, we recently set forth the relevant standards in *United States v. Liu*, 731 F.3d 982 (9th Cir. 2013).[6]

In *Liu*, the district court had instructed the jury that the defendant could be convicted of willful infringement if he "without authorization duplicated, reproduced or sold the copyright belonging to the owners of the works" and that "an act is done 'willfully' if the act is done knowingly and

---

[5] Even if we ignored counsel's acceptance of the combined instruction, de novo review would only apply to the district court's decision to reject Anderson's willfulness instruction.  Plain error review would still apply to the district court's formulation of the final instruction.

[6] The decision in *Liu* was issued after we heard argument in this case. We subsequently granted the parties' joint request to provide supplemental briefing "addressing the effect of this court's decision in *Liu* on the question of whether the district court's instructions properly charged the jury on the element of willfulness."

intentionally, not through ignorance, mistake or accident." *Id.* at 988 (alteration and internal quotation marks omitted). The district court failed to incorporate an agreed-upon instruction that would have provided that "evidence of reproduction or distribution of a copyrighted work, by itself, shall not be sufficient to establish willful infringement of a copyright." *Id.* at 987–88 (alteration and internal quotation marks omitted). We reviewed the instructions de novo because the court failed to provide the defendant with an opportunity to object. *Id.* at 988.

We held that "willfully" as used in § 506(a) "connotes a 'voluntary, intentional violation of a known legal duty.'" *Id.* at 990 (quoting *Cheek*, 498 U.S. at 201). We noted that the key distinction between civil and criminal copyright liability is that civil liability requires the general intent to copy, whereas criminal liability requires the specific intent to violate the law. *Id.* at 989–90. We accordingly found that the district court had erred and that the error was not harmless. *Id.* at 992–93; *see also United States v. Wise*, 550 F.2d 1180, 1194 (9th Cir. 1977) (suggesting that the government must prove "an act intentionally done in violation of the law" to establish willfulness).

Thus, in order to satisfy the willfulness requirement, a defendant must have known that the copying was illegal. The parties do not seriously dispute this proposition. Rather, Anderson claims that the court's instruction was erroneous because it indicated that Anderson was guilty if he knew his actions "may infringe the copyrights" and "[m]ore is required than just Anderson knowing his actions may be illegal."

The government's original instruction in this case appeared to be based on commentary to a prior version of the

model civil instruction for "Willful Infringement."**[7]** The commentary stated: "An infringement was willful when the defendant engaged in acts that infringed the copyright, and knew that those actions *may* infringe the copyright." *Ninth Circuit Manual of Model Civil Jury Instructions* 20.25 cmt. (2001) (emphasis added). At the time of Anderson's prosecution, this commentary had been superseded by a new instruction that no longer used the word "may." *Ninth Circuit Manual of Model Civil Jury Instructions* 17.27 (2007). The commentary in the 2007 edition acknowledged that the earlier version "suggested language for a willful infringement instruction that merely required that a defendant have knowledge that its actions 'may influence' the plaintiff's copyright." *Id.* cmt. The government cited the 2007 edition of the *Manual* but relied on the superseded language from the 2001 edition. It is unclear to us why the government based its proposed instruction on the older version of the instruction.

3

"In general, a party is entitled to an instruction to help it prove its theory of the case . . . ." *United States v. Heredia*, 483 F.3d 913, 922 (9th Cir. 2007) (en banc). This entitlement, however, "is not unlimited." *United States v. Doe*, 705 F.3d 1134, 1144 (9th Cir. 2013). A district court may properly reject a misleading or confusing instruction. *See Hammer v. Gross*, 932 F.2d 842, 849 (9th Cir. 1991). "In

---

**[7]** Although willfulness is not required to establish civil liability, it does play a role in civil copyright litigation. Where proven, it can subject a civil defendant to an increased award of statutory damages under the Act. § 504(c)(2). We have previously accepted "the general principle in copyright law of looking to civil authority for guidance in criminal cases." *Wise*, 550 F.3d at 1188 n.14.

reviewing jury instructions, the relevant inquiry is whether the instructions as a whole are misleading or inadequate to guide the jury's deliberation." *United States v. Chao Fan Xu*, 706 F.3d 965, 985 (9th Cir. 2013) (internal quotation marks omitted).

The district court rejected Anderson's proposed instruction because it sought to add additional elements and had the potential to create confusion. Although each individual statement in Anderson's instruction had support in the case law, the combination of the statements was, at the very least, ineloquent and would have likely created confusion among persons without legal training. The district court reasonably distilled Anderson's proposed instruction to its fundamental point.

Anderson's real objection is to the use of the word "may" in the sentence of the instruction indicating that the government had to prove that he must have known that his "actions may infringe the copyrights." He failed to object to this language and this failure was likely material given that the government agreed during the conference that it had to show that Anderson knew he was infringing Adobe's copyright in order to establish willfulness.

The word "may" is vague and renders the first sentence of the instruction incorrect to the extent that it suggests that Anderson could be convicted without knowing that he was violating Adobe's rights. Indeed, it would not be enough for the government to show only that he knew that there was a possibility that his actions were illegal. Nonetheless, error is only plain where it is "clear and obvious." *Kilbride*, 584 F.3d at 1255. The parties and the court did not perceive any issue

with the phrasing of the sentence despite parsing the language very carefully.

Notably, although the government did not pursue recklessness or willful blindness theories, those are valid theories for satisfying the intent element in this context. *See Wash. Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 674 (9th Cir. 2012). Under those theories, the willfulness requirement is satisfied where there is a showing that the defendant recklessly disregarded "the high probability that it was infringing plaintiffs' copyrights." *Id.* (internal quotation marks and citation omitted). Thus, the defendant's actions could be willful even if the defendant only knew that the copying "may be illegal" but did not know that it was to a certainty. Consequently, the instruction was arguably correct in that technical sense. Nonetheless, we do not endorse the instruction, as without further explanation, it was imprecise at the very least. Imprecision, however, is not the equivalent of clear and obvious error.

More significantly, when viewed in its entirety, the instruction was not misleading or inadequate. Although the word "may" rendered the first half of the instruction vague, the last sentence explicitly required the jury to find that Anderson knew his actions constituted copyright infringement for the jury to convict. Indeed, this standard is arguably more stringent than what *Liu* requires, as it required the jury to find that he specifically knew that his actions constituted "copyright infringement" in order to convict, rather than the more generalized knowledge that he was

violating a legal duty.[8]    This language materially distinguishes this case from *Liu*, where the district court essentially instructed the jury that it could convict the defendant as long as it found that he had the general intent to copy.  Although the district court may have misspoken when reading the instruction to the jury, it directed the jury to the written copies of the instructions that were provided to the jury immediately before the jury announced that it had reached the verdict.

Moreover, any error did not affect substantial rights or the fairness, integrity or public reputation of the proceedings.  In context, it is apparent that there was no misunderstanding about the meaning of the instruction.  The government referred to the last sentence of the instruction in its closing argument, asking: "did the defendant know that his actions constituted copyright infringement?  Of course he knew." Defense counsel also invoked the correct standard, stating

---

[8] Indeed, in analogous contexts, we have found that a specific intent requirement only required that the defendant know that his or her conduct was unlawful rather than that he or she was violating a specific statutory or regulatory provision.  *See United States v. Mousavi*, 604 F.3d 1084, 1094 (9th Cir. 2010) ("[W]e conclude that 'willfulness' under [the International Economic Emergency Powers Act] requires the government to prove beyond a reasonable doubt that the defendant acted with knowledge 'that his conduct was unlawful,' but not that the defendant was aware of a specific licensing requirement." (citation omitted)); *United States v. Easterday*, 564 F.3d 1004, 1006 (9th Cir. 2009) ("[I]f you know that you owe taxes and you do not pay them, you have acted willfully."). The following instruction, referenced in *United States v. Cross*, 816 F.2d 297 (7th Cir. 1987), thus accurately states the law: "the wor[d] 'willfully' as used in the statute means the act was committed by a defendant voluntarily, with knowledge that it was prohibited by law, and with the purpose of violating the law, and not by mistake, accident or in good faith."  *Id.* at 300 (alteration marks omitted).

that Anderson "must have known his actions constituted a copyright infringement in order for you to find he acted willfully." There was also overwhelming evidence that Anderson acted with the requisite knowledge that his actions were unlawful, including his admissions that he: (a) only resorted to selling unauthorized software after determining that he did not have the resources to pursue a legitimate deal with Adobe; (b) had been told by his customers that what he was doing was illegal, but continued to do it; and (c) knew that his customers were not using the discs for backup purposes.

Thus, evaluating the instructions as a whole, any error was neither "clear and obvious" nor substantial or prejudicial. Consequently, the district court's willfulness instruction did not constitute plain error.

III

Prior to trial, Anderson filed a motion in limine seeking to preclude the government from introducing "uncharged but allegedly improper conduct," including evidence that: (1) Morris purchased a copy of Adobe Fireworks from Anderson; and (2) Anderson possessed other discs containing Adobe software. He argued that the evidence was not admissible under Federal Rule of Evidence 404(b) as intrinsic evidence of the crime, and alternatively, that it should be excluded under Rule 403. The district court denied the motion, finding that the evidence was "intrinsic" to Anderson's "business model," completed an explanation of Anderson's conduct and business plan, and was not unfairly prejudicial. Anderson

contends that the district court erred.[9]  "We review a district court's evidentiary rulings for an abuse of discretion and its interpretation of the Federal Rules of Evidence de novo." *United States v. Waters*, 627 F.3d 345, 351–52 (9th Cir. 2010) (emphasis omitted).

A

"Other act" evidence that is "inextricably intertwined" with a charged offense is independently admissible and is exempt from the requirements of Rule 404(b). *United States v. Dorsey*, 677 F.3d 944, 951 (9th Cir. 2012); *accord* Fed. R. Evid. 404(b) advisory committee's notes (stating that Rule 404(b)'s requirements do "not extend to evidence of acts which are 'intrinsic' to the charged offense"). Such intrinsic evidence includes evidence constituting "a part of the transaction that serves as the basis for the criminal charge." *Dorsey*, 677 F.3d at 951 (internal quotation marks omitted). We have found, for example, that contemporaneous uncharged drug transactions may be admissible on this basis. *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995). This is because Rule 404(b) does not apply "when offenses committed as part of a single criminal episode become other acts simply because the defendant is indicted for less than all of his actions." *Id.* (internal quotation marks omitted). A transaction that is far removed in time from the charged transaction, however, cannot be considered "a part of" the charged transaction. *See United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004).

---

[9] On appeal, Anderson does not challenge the evidence that the discs he sold contained plug-ins, or that he possessed the key generator.

Intrinsic evidence, however, also includes evidence that is "necessary to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *Dorsey*, 677 F.3d at 951 (alteration and internal quotation marks omitted). This is because "[t]he jury cannot be expected to make its decision in a void – without knowledge of the time, place, and circumstances of the acts which form the basis of the charge." *Vizcarra-Martinez*, 66 F.3d at 1013 (original alteration marks and quotation marks omitted). This includes circumstantial evidence explaining the general nature of a defendant's business activity and providing a context in which the transactions at issue took place. *United States v. King*, 200 F.3d 1207, 1215 (9th Cir. 1999). Where the evidence, however, is not part of the charged transaction and the prosecution would encounter little difficulty in presenting the evidence relevant to its case against the defendant without it, the evidence is not admissible as being intrinsic to the charged offense. *See id.*

Here, the Fireworks sale, which occurred six months after the charged conduct took place, is arguably too far removed in time to constitute a part of the charged transaction.[10] Nonetheless, the evidence of both the Fireworks sale and the Adobe programs that Anderson possessed when he was arrested do help explain Anderson's business operations, including his manufacturing process. Anderson argues that the government's case was "complete" without this evidence and that it was unnecessary. However, the larger and more sophisticated his operation was, the more likely it was that he

---

[10] The Fireworks sale was not chargeable on the same basis as the other sales because 18 U.S.C. § 2319(b)(1) requires reproduction or distribution of a minimum of ten copies to subject an individual to a sentence of up to five years of imprisonment.

knew what he was doing was illegal. Moreover, the Fireworks sale also explained the circumstances leading up to his arrest, where the government obtained additional evidence that Anderson is not disputing, including the blank discs, key generator disc, and plug-ins disc. Consequently, the evidence was intrinsic to the charged conduct in that it was reasonably necessary for the prosecution to tell a clear and comprehensible story.

B

A district court has discretion to exclude otherwise relevant evidence under Rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Waters*, 627 F.3d at 353 (quoting Fed. R. Evid. 403). "Unfair prejudice" is an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) (quoting Fed. R. Evid. 403 advisory committee's note). The Rule "requires that the probative value of the evidence be compared to the articulated reasons for exclusion and permits exclusion only if one or more of those reasons 'substantially outweigh' the probative value." *Id.*

The evidence here was not unfairly prejudicial. It was very similar to the charged conduct. It was probative because it showed the scale of Anderson's operations and conduct. Nonetheless, it was not particularly damning in light of all the other evidence directly relating to the charged conduct. Consequently, any prejudice was fairly insignificant. Moreover, it was not the type of "bad act" evidence that

would suggest that the jury should decide the case on an improper emotional basis. Unlike evidence of drug sales, for example, evidence of software sales does not have a strong prejudicial impact because there is nothing inherently wrong with selling software, which is usually sold legally. In any event, the district court did not abuse its discretion by finding that the evidence was not unfairly prejudicial.

IV

The district court found that Adobe was the victim of Anderson's crime and calculated restitution by multiplying the number of copies Anderson sold by Adobe's retail price. Anderson claims that the district court erred, arguing that the court should have: (a) used the price he charged his customers because they were the real victims and Adobe's loss is speculative; (b) used Adobe's lost profits instead of its retail price because lost profit is a more accurate measure of actual loss; and (c) discounted the amount of restitution by the number of returns. "We review the legality of a restitution order, including the district court's valuation method, de novo." *United States v. Yeung*, 672 F.3d 594, 600 (9th Cir. 2012). We review the amount for abuse of discretion if "the order is within the statutory bounds." *Id.* (internal quotation marks omitted). We review the district court's "factual findings supporting an order of restitution for clear error." *Id.*

A

The presentence report recommended calculating the loss at "at least $247,144," representing Anderson's total Pricegrabber sales multiplied by the retail value of the authorized software. The loss calculation was relevant both to Anderson's Sentencing Guidelines' calculation and the

amount of restitution. Anderson objected to using the retail value of Adobe's software (as opposed to the price he charged) and argued that he should receive credit for returns. The government agreed with the presentence report but eventually conceded that Anderson should get credit for the returned software in the amount of Anderson's price. Anderson's counsel argued that any returns should be offset at Adobe's retail price if that was the price being used to set the amount of the loss. In response to Anderson's arguments, the probation officer noted that Anderson's conduct affected Adobe in other ways, causing it to spend additional time on customer support and causing damage to its reputation.

The district court found that the loss amount exceeded $200,000, pursuant to the Guidelines commentary, subjecting Anderson to a sentencing enhancement under U.S.S.G. § 2B5.3 note 2(A)(i). The court then imposed restitution in the amount of $247,144, specifically declining to offset the returns because "the victim in this case is really Adobe."

B

Under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, "a court must order a defendant to make restitution to a victim of certain specified offenses without considering the defendant's economic circumstances." *Yeung*, 672 F.3d at 600. "The MVRA defines the word 'victim' as 'a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered.'" *Id.* (quoting § 3663A(a)(2)). The goal of restitution under the MVRA is to make the victim whole. *Id.* at 600–01. Consequently, any award is limited to the victim's "actual losses." *United States v. Fu Sheng Kuo*, 620 F.3d 1158, 1165–66 (9th Cir. 2010).

Accordingly, "the district court may not order restitution to reflect Defendants' ill-gotten gains." *Id.* at 1166. The government has the burden of proving the amount of the loss by a preponderance of the evidence. *Yeung*, 672 F.3d at 601 (citing § 3664(e)).

We may uphold a restitution order "where the district court fails to make pertinent factual findings . . . when the basis of the district court's calculations is clear." *Id.* at 604. Indeed, the MVRA affords the district court a degree of flexibility in assessing the victim's actual losses; nonetheless, "the district court may utilize only evidence that possesses sufficient indicia of reliability to support its probable accuracy." *United States v. Waknine*, 543 F.3d 546, 557 (9th Cir. 2008) (alteration and quotation marks omitted). Additionally, a district court should not rely on its calculation of the loss under the Sentencing Guidelines to determine the amount of restitution as the two measures serve different purposes and utilize different calculation methods. *United States v. Gossi*, 608 F.3d 574, 580–82 (9th Cir. 2010) ("Sentencing, unlike restitution, focuses on the criminal defendant. . . . Restitution clearly focuses on the *victim*, not the individual defendant."). "[R]emand is appropriate where the restitution award lacks an adequate evidentiary basis and the district court failed to explain its reasoning." *Yeung*, 672 F.3d at 602.

Anderson relies on *United States v. Chalupnik*, 514 F.3d 748 (8th Cir. 2008). In that case, the defendant was a post office janitor who had taken thousands of undeliverable CDs and DVDs originally sent by BMG and sold them to used record stores. *Id.* at 750. The district court imposed restitution in the amount of the defendant's gross revenues. *Id.* at 751. The Eighth Circuit agreed that BMG could be a

victim even though it was not the owner of the copyrights and might not be able to sue the defendant for copyright infringement. *Id.* at 753–54. However, the court rejected district court's use of the defendant's "ill-gotten gains" as the measure for BMG's loss because any loss was suffered by the market of retailers, in addition to BMG and the copyright owners. *Id.* at 754–55. The court also noted that "for goods held by a merchant for sale, lost profits rather than lost sales revenues are the proper measure of 'actual loss.'" *Id.* at 755. Moreover, the court stated that any calculation of lost sales or lost profits may not be "based entirely upon speculation." *Id.* (internal quotation marks omitted).

The parties also cite the D.C. Circuit's recent decision in *United States v. Fair*, 699 F.3d 508 (D.C. Cir. 2012). Like the present case, *Fair* involved a defendant who was convicted of selling illegal copies of Adobe software. *Id.* at 510. The district court ordered the defendant to pay restitution corresponding to his infringing sales. *Id.* at 511–12. Reviewing the case law, the D.C. Circuit explained:

> In cases involving copyright infringement and fraudulent sales, the victim's actual loss typically equates to the profit the victim lost on the sales that were diverted from the victim as a result of the defendant's infringing sales. Under this lost-profits on diverted-sales theory, the government must offer sufficient evidence to establish both the profit margin per sale and the number of sales lost. If the record does not demonstrate that the counterfeit goods ever reached the market, or that their introduction to the market in fact "thwarted" actual sales of the victim's

product, courts have held that no actual loss can be shown and restitution therefore is inappropriate. In this regard, the actual loss to the displaced (authentic) seller is the profit lost from the displaced sales – not the retail value of the goods that would have been sold. The gross proceeds that the defendant collects from infringing sales are similarly an inappropriate gauge of the victim's lost profits.

*Id.* at 514 (citations omitted). The court also rejected the reliance on lost opportunity sales where there "was no evidentiary basis on which the district court could find that had [the defendant's] customers not purchased pirated Adobe software from him at a greatly reduced price, all or any portion of them would have purchased full-priced versions from Adobe." *Id.* at 515. Accordingly, the court vacated the district court's restitution order. *Id.* at 518.[11]

Consistent with our own restitution precedents, as well as *Chalupnik* and *Fair*, we hold that restitution in a criminal copyright case must reflect the victim's actual losses, not the

---

[11] *See also United States v. Hudson*, 483 F.3d 707, 710 (10th Cir. 2007) (expressing skepticism of the suggestion that a purchaser of discounted counterfeit software would be willing to purchase authentic software at full price); *United States v. Beydoun*, 469 F.3d 102, 108 (5th Cir. 2006) (concluding that there could be no actual loss for inauthentic items that were never sold and that the proper measure of loss was the legitimate sellers' lost net profit rather than lost gross proceeds); *United States v. Dove*, 585 F. Supp. 2d 865, 872–73 (W.D. Va. 2008) (rejecting restitution calculations based on total revenue, as opposed to lost profits, and assumptions that each of the defendant's illegal transfers resulted in a lost sale to the victims).

defendant's gain. In most cases, that will consist of the copyright owner's lost profits on sales that would have taken place if not for the infringing conduct. Moreover, the fact that a consumer purchased an infringing copy at a greatly reduced price is not sufficient, alone, to establish that the consumer would have purchased an authentic copy at full price.

Here, the district court properly concluded that Adobe was the primary victim of Anderson's crime. In his brief, Anderson suggested that this was error, but at oral argument, Anderson's counsel essentially conceded that Adobe was a victim. Indeed, unlike the victim in *Chalupnik*, Adobe was the copyright owner, not a mere retailer, and thus it was entitled to compensation for each lost sale. That does not necessarily mean, however, that Adobe was the sole victim. To the extent that Anderson's conduct directly caused his customers to suffer actual, quantifiable losses, they may also be victims under the MVRA. *Cf. Chalupnik*, 514 F.3d at 753–54.

Anderson is correct to the extent that he suggests that the district court erred in calculating restitution. Here, the district court appeared to rely on the Sentencing Guidelines loss calculation in setting the amount of restitution. The court also rejected the parties' suggestion that restitution should reflect discounts for any returned products. There was evidence in the record that Adobe suffered other losses, including time spent on customer support and a loss of goodwill, and the district court may have refused to apply the discount for returns as a proxy for these losses. Although the district court's sentiment is understandable, the MVRA requires more precision. A "back-of-the-envelope" approach simply will not do. *See United States v. Innarelli*, 524 F.3d

286, 294 (1st Cir. 2008) (remanding to the district court to reconsider several possible errors in its "rough approximation" of the victims' losses). Consequently, on this basis alone, the district court's loss calculation was erroneous.[12]

Although the issue was not raised before the district court, the district court also erred in using the full retail price as opposed to lost profits to calculate the actual loss. Moreover, the district court did not consider whether purchasers of Anderson's discounted software would have, in fact, purchased full price authentic software if Anderson's software had not been available. These are clear and obvious errors because they are inconsistent with the statutory requirements. The errors affected substantial rights and the fundamental fairness of the proceeding given that they may have vastly inflated the restitution in excess of Adobe's actual losses. *See Yeung*, 672 F.3d at 602 (citing cases for the proposition that it is plain error to award restitution in excess of the victim's actual losses); *Fu Sheng Kuo*, 620 F.3d at 1165 (determining that the district court plainly erred where we could not determine whether the amount of restitution exceeded the victim's actual losses under its incorrect calculation method).

---

[12] We express no view as to whether time spent on customer support and a loss of goodwill can constitute actual loss under the MVRA, but we note that the issue is not free from doubt. *See* Catharine M. Goodwin, *Federal Criminal Restitution* § 6:22 (2013) ("[T]he loss must be tangible, actual, or 'out-of-pocket.' It cannot include intangible aspects of harm that are sometimes included in civil damages or Guidelines sentencing, such as intended harm, risk of harm, opportunity costs, or speculative harm." (citations omitted)).

We nonetheless acknowledge that the district court did not have the benefit of the *Fair* decision or our guidance in this specific context. Accordingly, we "vacate the restitution order and remand the case to the district court on an open record to allow for the recalculation of restitution." *Fu Sheng Kuo*, 620 F.3d at 1166. Any restitution awarded to Adobe for lost sales may only reflect Adobe's lost profits for sales that were actually diverted.[13]

V

We recognize that our application of *Liu* in this case arrives at a different result than we reached in that case. That is so because the facts of this case are materially different from those in *Liu*. In *Liu*, the district court failed to give the parties' agreed-upon instruction and essentially told the jury that it could convict the defendant if it found that he intentionally made the copies. Here, although the instruction in this case was imperfect, the district court crafted the instruction in consultation with the parties and with the acquiescence of Anderson's counsel. Furthermore, it required the jury to find that Anderson knew he was infringing Adobe's copyright in order to convict him. Consequently, there was no plain error. Similarly, because the evidence of Anderson's uncharged activities was intrinsic to the charged conduct and was not unduly prejudicial, the district court did not err in admitting the evidence.

---

[13] Although Anderson does not raise the issue on appeal, we note that the district court was correct to reject his suggestion that the proper valuation method was the amount that he charged his customers. *See Fu Sheng Kuo*, 620 F.3d at 1166.

We further recognize that applying the MVRA can be complex and somewhat burdensome.  The MVRA requires restitution for certain victims but also requires some precision when calculating restitution.  Speculation and rough justice are not permitted.  *See Innarelli*, 524 F.3d at 294. Nonetheless, exact precision is not required and district courts do have a degree of flexibility in accounting for a victim's complete losses; thus, a "reasonable estimate" will suffice. Goodwin, *supra*, § 7:4.  Ultimately, however, it is the government's burden to establish that the victim suffered an actual loss in a quantifiable amount.  Where the alleged loss is not quantifiable to any degree of certainty, the government's burden has not been satisfied, and no restitution should be ordered.  *Cf.* 18 U.S.C. § 366A(c)(3)(B).  As we had not previously set forth these standards in this context, the district court understandably failed to apply them. Accordingly, we vacate the restitution order and remand to the district court for recalculation of restitution.

**AFFIRMED,   IN   PART,   VACATED   AND REMANDED, IN PART.**