**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 12, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JACKIE DUNCAN,

    Defendant - Appellant.

No. 18-6009
(D.C. No. 5:14-CR-00305-M-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **BACHARACH**, and **PHILLIPS**, Circuit Judges.
_____

Jackie Duncan appeals his conviction for, among other offenses, being a felon in

possession of a firearm.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**BACKGROUND**

Duncan was a member of the 107 Hoover Crips gang.  During February and

March 2014, he and other gang members committed several robberies and shootings in

Lawton, Oklahoma.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

Duncan was eventually arrested and tried on eight counts: conspiracy to interfere with commerce by robbery, 18 U.S.C. § 1951(a); felon in possession of a firearm, 18 U.S.C. § 922(g)(1); possessing a controlled substance with intent to distribute, 21 U.S.C. § 841(a)(1); possessing/brandishing a firearm in furtherance of drug trafficking, 18 U.S.C. § 924(c)(1)(A); interfering with commerce by robbery, 18 U.S.C. § 1951(a) (two counts); and possessing/brandishing a firearm in furtherance of a violent crime, 18 U.S.C. § 924(c)(1)(A) (two counts).

Before trial, Duncan filed a motion in limine, seeking to exclude evidence that Anthony Johnson had "identified [him] as the individual who shot him . . . on February 27, 2014." R., Vol. I at 135. Duncan argued that "[t]his evidence is not admissible pursuant to Rule 404(b), Fed.R.Evid., is not inextricably intertwined with the facts of the case, and its probative value is substantially outweighed by the danger of unfair prejudice." *Id.* (internal quotation marks omitted). He explained that "[i]f the jury receives evidence that [he] not only possessed and discharged the firearm alleged in [the felon-in-possession count] of the superseding indictment . . . , but that he also shot someone with it[,] then there is a substantial risk the jury will assume [he] acted in conformity and committed the other acts charged in the remaining counts." *Id.* at 137. The government opposed the motion, asserting that the "shooting completes the story of the crime charged." *Id.* at 148. The district judge denied the motion.

At trial, the prosecutor elicited that Johnson had been shot by Duncan. Specifically, Johnson, who described himself as an "[o]ld gang member" of the 24 Karat Crips, *id.*, Vol. III at 328, 333, testified that he got shot in the back on February 27, 2014,

2

after going to a house on McKinley Street to buy crack cocaine. He explained that he went inside and saw "7-Shot," a member of the 107 Hoover Crips—a gang that Johnson had robbed in the past. *Id.* at 339, 340. Feeling "a bad vibe," *id.* at 341, Johnson went outside to the front yard. There, he saw Duncan, who was also a 107 Hoover gang member, coming toward him from the back yard. According to Johnson, Duncan shot him and then and called for 7-Shot, who came outside, shooting at Johnson as well. Johnson retreated to the back of the house while Duncan and 7-Shot jumped in a vehicle and drove off.

Johnson further testified that he called 911 and reported he had been shot in the back. Police officers responded, located Johnson, and summoned an ambulance. Officer Lindsey Adamson testified that when she encountered Johnson, he "had blood on his jacket and a bullet hole in his back." *Id.* at 290. The officers searched the area and found six .40 caliber and seven 9mm shell casings.

The prosecution next provided evidence of Duncan's involvement in crimes two days later—evidence that showed Duncan's possession of the same gun he had used to shoot Johnson. Specifically, during the early morning hours of March 1, 2014, Duncan and several of his associates robbed drug dealers and others at two separate residences.

One of the drug dealers, Travis Carpenter, testified that Duncan pointed a 9mm pistol at him in the kitchen while Duncan and an associate robbed him. Carpenter indicated that Duncan or the other man fired one or two shots in the process, and that both men "jumped on [him] . . . [and] beat [him] down." *Id.* at 455. Police later discovered two bullet holes in the kitchen, and they recovered a 9mm shell casing.

3

The other drug dealer, Donald Willis, testified that Duncan, 7-Shot, and others broke into his bedroom and demanded Willis's gun and money. According to Willis, Duncan threatened to shoot Willis if he moved, and after the assailants found his gun and money, Duncan threatened to kill him if he reported the incident.

Duncan, by then the subject of two arrest warrants, was apprehended on April 9, 2014, by Lawton police officers who had been dispatched to a residence on a report of a burglary in progress. Duncan had driven to the residence with 7-Shot and another member of the 107 Hoover Crips, who testified that Duncan was carrying a pistol in a holster. When police arrived, Duncan fled on foot and discarded the holster. Police captured Duncan, found the holster, and discovered a fully-loaded 9mm pistol under the driver's seat that fit into the holster. A firearms examiner testified that the eight 9mm shell casings found at the two residences were fired in the pistol recovered from Duncan's car.

The jury found Duncan guilty on six of the eight counts: conspiracy; being a felon in possession of a firearm; interfering with commerce by robbery (two counts); and possessing/brandishing a firearm in furtherance of a violent crime (two counts). The court sentenced Duncan to 386 months' imprisonment: 384 months for the two counts of possessing/brandishing a firearm; consecutive to 1 month for the conspiracy and interference-with-commerce counts; consecutive to 1 month for the felon-in-possession count.

4

Duncan contends the district court erred in admitting evidence that he shot Johnson. Duncan stresses that he was not charged for the shooting, and he asserts that "the government could [have] introduce[d] evidence of [his] possession of the weapon and [participation in] gang activity without reference to the firing of the gun and the shooting and injury of Mr. Johnson." Aplt. Br. at 10-11. According to Duncan, evidence of the shooting was offered only to establish his criminal disposition. "[W]e review a district court's decision to admit evidence for an abuse of discretion, and we reverse [such] a decision only if it is manifestly erroneous." *United States v. Irving*, 665 F.3d 1184, 1210 (10th Cir. 2011) (internal quotation marks omitted).

Federal Rule of Evidence 404(b) governs the admission of certain uncharged criminal or otherwise wrongful conduct: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence is limited to proving things like "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* 404(b)(2).

But the limitations of Rule 404(b)(1) and (2) are implicated only by "evidence of acts *extrinsic* to the charged crime." *Irving*, 665 F.3d at 1212 (emphasis added; internal quotation marks omitted). Thus, "[i]f the contested evidence is intrinsic to the charged crime, then Rule 404(b) is not even applicable." *Id.*

"[O]ther act evidence is intrinsic . . . when the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single

5

criminal episode or the other acts were necessary preliminaries to the crime charged." *Id.* (internal quotation marks omitted). In other words, "intrinsic evidence is that which is directly connected to the factual circumstances of the crime and provides contextual or background information to the jury." *Id.* (internal quotation marks omitted).

We conclude that the district court would not have abused its discretion in admitting the evidence of Johnson's shooting as intrinsic to the felon-in-possession count. The shooting offered context for the 9mm shell casings that were found by law enforcement and later matched to the 9mm handgun discovered in Duncan's car. *See United States v. Mills*, 29 F.3d 545, 549 (10th Cir. 1994) (noting that constructive possession of a firearm in a jointly occupied vehicle requires "some connection or nexus between the defendant and the firearm"). In short, Duncan's contemporaneous possession of the firearm and shooting of Johnson were part of a single criminal episode that connected the gun recovered by police to Duncan. Thus, the district court had the discretion to conclude that Rule 404(b) was not applicable. *See United States v. Buckner*, 868 F.3d 684, 688 (8th Cir. 2017) (holding that prior shooting was admissible intrinsic evidence connecting defendant to gun found in a vehicle in which he was a passenger); *United States v. Anderson*, 741 F.3d 938, 949 (9th Cir. 2013) (stating that "Rule 404(b) does not apply when offenses committed as part of a single criminal episode become other acts simply because the defendant is indicted for less than all of his actions" (internal quotation marks omitted)).

Even though we conclude that the district court would have been acting within its discretion in ruling that the evidence of Johnson's shooting was not subject to Rule

6

404(b), we must still assess whether the district court would have abused its discretion in determining that the probative value of that evidence was not substantially outweighed by the danger of unfair prejudice. *See Irving*, 665 F.3d at 1213 (citing Fed. R. Evid. 403). Duncan argues that the evidence of Johnson being shot was unfairly prejudicial because it implied he had a "bad character and . . . rais[ed] the odds that he" committed the two § 924(c)(1)(A) crimes—brandishing or discharging a firearm during the Carpenter and Willis robberies. Aplt. Br. at 15 (internal quotation marks omitted). The district court could reasonably reject such an argument. The evidence of Duncan's involvement in, and violent/threatening conduct during, the robberies was overwhelming. Both Carpenter and Willis testified unequivocally that Duncan pointed a gun at them and robbed them. Further, Carpenter testified that Duncan also beat him, and Willis testified that Duncan threatened to kill him. Given the strength of the government's evidence, the district court would not have abused its discretion in concluding that the evidence of Duncan's shooting of Johnson would not likely have affected the jury's decisionmaking regarding the § 924(c)(1)(A) charges.

Duncan also maintains that the evidence of Johnson being shot was unfairly prejudicial because it "was highly emotional," given that Johnson also testified he was in pain at trial, illiterate, homeless, and needed money for food. Aplt. Br. at 16. But these points merely set a background for Johnson's testimony, offering relevant information concerning Johnson's personal circumstances and explaining how he had agreed to testify for the prosecution. Therefore, the district court could have reasonably concluded that

7

such background testimony would not have rendered the testimony about Duncan's shooting of Johnson unfairly prejudicial.

## CONCLUSION

We affirm the district court's judgment.

Entered for the Court


Jerome A. Holmes
Circuit Judge