USA v. Messina

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2014

(Argued: April 16, 2015     Decided: November 12, 2015)

Docket No. 14-1219-cr

UNITED STATES OF AMERICA,

*Appellee,*

—v.—

NEIL MESSINA,

*Defendant-Appellant,*

JOHN PORCELLO, AKA JOHNNY PIZZA, NICOLO VALENTI, AKA NICK,
BENITO VALENTI, AKA BENNY,

*Defendants.*

Before:

CALABRESI, CABRANES, and RAGGI, *Circuit Judges.*

On appeal from a judgment of conviction in the Eastern District of New York (Matsumoto, *J.*) for racketeering conspiracy, defendant argues that the district court erred (1) in sentencing him to a below-Guidelines term of 18 years' imprisonment, relying on commentary to U.S.S.G. § 6B1.2(b) to reject the prosecution's non-binding recommendation of a 10-year sentence, <u>see</u> Fed. R. Crim. P. 11(c)(1)(B); and (2) in including within its $120,611.30 order of restitution $112,324.30 in income lost by a murder victim of the racketeering conspiracy after death.

AFFIRMED.

---

BRENDAN WHITE (Diarmuid White, White & White; Gerald J. McMahon, Esq., *on the brief*), White & White, New York, New York, *for Defendant-Appellant*.

ALLON LIFSHITZ (David C. James, Amanda Hector, *on the brief*), Assistant United States Attorneys, *for* Robert L. Capers, United States Attorney for the Eastern District of New York, Brooklyn, New York, *for Appellee*.

---

REENA RAGGI, *Circuit Judge*:

Defendant Neil Messina stands convicted on an amended judgment entered on May 22, 2014, in the Eastern District of New York (Kiyo A.

2

Matsumoto, *Judge*) of one count of racketeering conspiracy as an associate of the Bonanno crime family within the charged enterprise of La Cosa Nostra. In pleading guilty, Messina admitted three charged predicate acts: (1) the extortionate extension of credit in 2008 and 2009; (2) the operation, with others, of an illegal gambling business between 2008 and 2009; and (3) the 2002 conspiracy to rob Joseph Pistone, Sr., in the course of which Joseph Pistone, Jr. ("Pistone"), was fatally shot by a co-conspirator. On this appeal, Messina does not dispute his guilt. Rather, he contends that his below-Guidelines 18-year sentence is unreasonable, particularly in light of the prosecution's non-binding recommendation of a 10-year prison term. See Fed. R. Crim. P. 11(c)(1)(B). Messina also challenges the district court's $120,611.30 order of restitution, arguing that it erroneously awards $112,324.30 in income lost by murder victim Pistone in the interval between his 2002 death and the challenged judgment. Because both arguments are meritless, we affirm the challenged judgment.

## I.    Background

### A.    Guilty Plea

On February 14, 2013, Messina pleaded guilty before Magistrate Judge Ramon E. Reyes, Jr., to one count of racketeering conspiracy pursuant to an agreement with the prosecution.  As part of that agreement, Messina stipulated, among other things, that in 2002 he had agreed with others to commit a robbery in which he knew that co-conspirators would be armed, and in furtherance of which robbery a co-conspirator shot Pistone dead.  Messina also stipulated to a Guidelines total offense level of 40, which, with a predicted criminal history category of II, would have yielded a 324-to-405-month sentencing range but for the fact that the statutory maximum—and, therefore, the effective Guidelines range—for the crime of conviction was 240 months' (i.e., 20 years') imprisonment.  See 18 U.S.C. § 1963(a).  In return for these stipulations and other promises, the prosecution agreed to recommend that the district court sentence Messina to a 10-year prison term.  At his allocution, Messina acknowledged that such a recommendation would not bind the district court.  Thereafter, Judge

4

Matsumoto accepted Messina's guilty plea on the basis of the full record before her.

    B.    <u>Sentencing</u>

        1.    <u>The Parties' Sentencing Recommendations</u>

In its presentence submission to the district court, the prosecution honored its plea agreement obligation by making an advisory recommendation pursuant to Fed. R. Crim. P. 11(c)(1)(B) that Messina be sentenced to 10 years' incarceration.[1] It submitted that such a sentence "appropriately balances the defendant's criminal history and the seriousness of the defendant's conduct against the significant prosecutorial risks and burdens avoided through a negotiated resolution, and permits careful allocation of prosecutorial and other governmental resources that would otherwise be devoted to trial litigation." Prosecution Letter, Nov. 7, 2013, at 1. The prosecution observed that, but for the

---

[1] Pursuant to Rule 11(c)(1)(B), a plea agreement may specify that the government will "recommend . . . that a particular sentence or sentencing range is appropriate," but "such a recommendation or request does not bind the court." By contrast, Rule 11(c)(1)(C) states that a plea agreement may specify that the government will "agree that a specific sentence or sentencing range is the appropriate disposition," in which case "such a recommendation or request binds the court once the court accepts the plea agreement."

plea agreement, "the government would have been faced with the risk of trial, which in all cases includes the possibility of adverse verdicts on one or more counts of the indictment." Id. It represented that the plea agreement (including the recommended 10-year sentence) avoided that risk, provided the district court with "the opportunity to impose a reasonable sentence in light of the defendant's acceptance of responsibility," and permitted the prosecution "to focus its resources on additional offenders and additional threats." Id. at 1–2. Meanwhile, Messina's counsel urged an even lower prison sentence of between five and seven years. See Messina Sentencing Mem. at 38.

### 2. The District Court's Initial Rejection of the Recommended 10-Year Sentence

On November 8, 2013, the district court formally accepted Messina's guilty plea, but rejected the recommended 10-year sentence. While acknowledging the government's November 7, 2013 letter, the district court concluded that there was no "justifiable reason" for the recommended sentence, which, it noted, represented a "dramatic downward departure" of 10 years, or 50%, from the effective 20-year Guideline. Tr., Nov. 8, 2013, at 9–10. The district court explained that Messina's significant role in many serious crimes, committed

6

under the auspices of organized crime, warranted a sentence significantly above 10 years. It further observed that the urged departure rested on the fact of Messina's guilty plea, a matter for which the commentary to U.S.S.G. § 6B1.2(b)(2) did not anticipate a reduction beyond the three-level acceptance-of-responsibility consideration of U.S.S.G. § 3E1.1.[2]

The district court did not then sentence Messina. Rather, it adjourned the proceedings to afford him a hearing on certain disputed facts. See United States v. Fatico, 579 F.2d 707 (2d Cir. 1978).

---

[2] Guideline § 6B1.2, entitled "Standards for Acceptance of Plea Agreements," is a policy statement, which states, among other things, that courts "may accept" non-binding sentencing recommendations outside the applicable Guidelines range "for justifiable reasons." U.S.S.G. § 6B1.2(b)(2)(A). Accompanying commentary explains that, consistent with U.S.S.G. § 5K2.0, a court "may not depart below the applicable guideline range merely because of the defendant's decision to plead guilty to the offense or to enter a plea agreement with respect to the offense." Id. § 6B1.2 cmt.; see id. § 5K2.0(d)(4) (stating that "departure may not be based merely on the fact that the defendant decided to plead guilty or to enter into a plea agreement," but "may be based on justifiable, non-prohibited reasons as part of a sentence that is recommended, or agreed to, in the plea agreement and accepted by the court").

7

3. <u>Imposition of a Below-Guidelines 18-Year Sentence</u>

On April 4, 2014, with the benefit of evidence adduced at the <u>Fatico</u> hearing, the district court made preponderance findings that Messina was responsible for Pistone's murder as a reasonably foreseeable consequence of the admitted armed robbery predicate. It further found Messina responsible for the attempted murder of Michele Maniscalco, who was shot in the back of the head (and thereby rendered a quadriplegic for the remaining two years of his life) by a hitman recruited and armed by Messina.[3] The court found Messina to have possessed firearms in furtherance of the admitted racketeering conspiracy as recently as 2010. It also found that on court-authorized wiretaps Messina's girlfriend described 39 months of severe physical abuse at his hands, which the defendant did not deny in the recorded conversations.[4]

---

[3] The Maniscalco attempted murder was one of the charged predicates to which Messina did not allocute in pleading guilty to racketeering conspiracy.

[4] Although the abuse conduct ultimately did not affect Messina's Guidelines calculation, the district court was careful to direct that the PSR be amended to note the girlfriend's subsequent denials of abuse. Such attention is evident throughout the sentencing record.

Having thus resolved all factual disputes, the district court calculated Messina's "advisory guideline total adjusted offense level at 41" and his criminal history category at III—one level and one category higher than anticipated in the plea agreement. This yielded a correspondingly higher advisory Guidelines range of 360-months-to-life imprisonment, which, like the 324-to-405-month range referenced in the parties' plea agreement, was superseded by the 20-year statutory maximum. See U.S.S.G. § 5G1.1(a).

The district court noted as additional "aggravating" factors (1) Messina's "long-time association with the Bonanno organized crime family . . . an especially dangerous criminal enterprise that depends on the willingness of individuals like Mr. Messina to use violence or the threat of violence to rob, enrich themselves or use extor[t]ion . . . to collect the proceeds of loans and engage in illegal gambling ventures," Tr., Apr. 4, 2014, at 40–41; (2) Messina's effort "to use Joseph Savarese, a soldier in the Colombo organized crime family with a reputation for violence, to convince workers at the New York Post to engage Mr. Messina's company," id. at 41; and (3) Messina's enlistment of Ralph

9

Scopo, then charged with "extorting a union" to get it to use Messina's company, id.

The district court then reiterated its rejection of the government's recommended 10-year sentence, explaining that nothing in the record supported such a significant departure from the 20-year Guideline "other than the fact that Mr. Messina has ple[aded] guilty and the parties wish to avoid the risks of a trial." Id. at 47. Accordingly, it sentenced Messina to 18 years' incarceration, a term "above the ten years recommended by the government, but below Mr. Messina's effective guideline range of 20 years." Id. at 56. In imposing this sentence, the district court provided a detailed explanation for its decision, spanning eight pages of transcript, which we summarize below.

To begin, the court specifically acknowledged that the Guidelines were not mandatory; rather, it gave them "respectful consideration," as required by 18 U.S.C. § 3553(a)(4). Id. at 51; see Kimbrough v. United States, 552 U.S. 85, 101 (2007). The court then generally confirmed its consideration of all § 3553(a) sentencing factors, particularly noting that the "nature" of Messina's crime of conviction—conspiracy to commit racketeering with members and associates of

10

the Bonanno organized crime family—was "a very serious offense." Id. "Most troubling" to the court was Messina's solicitation of the Maniscalco murder and his role in the foreseeable felony murder of Pistone. Id. at 52. While the court recognized that these crimes had occurred many years earlier, it found that "[t]he pain suffered by the families of these victims continues to this day" and that Messina had never answered for his actions. Id. The court further observed that Messina's association with organized crime was not only lengthy but continuing, having become "more active in recent years, including sports betting, loansharking," using mob connections "to obtain business for his insurance company," and continued illegal trafficking in firearms, including one gun "equipped with a handmade silencer." Id. at 52–53.

At the same time, the district court noted positive aspects of Messina's family history, his various health problems, his enrollment in treatment programs for alcohol and drug abuse, his successful educational and employment history, and the court's receipt of dozens of supportive letters "vividly depict[ing] the good and compassion that Mr. Messina is capable of showing others." Id. at 55.

Upon consideration of the totality of these circumstances, the district court determined that "a substantial sentence"—specifically, 18 years' incarceration—was necessary in light of Messina's criminal history, particularly his association and criminal activities with the Bonanno organized crime family, the nature of Messina's crime of conviction, and the loss of life and devastation resulting from Messina's offense.

### 4. The Challenged Restitution Order

At the April 4 sentencing, the district court directed the government to ascertain if Pistone's family sought restitution. On May 1, the government responded in the affirmative and provided documentation to support an award for income lost by Pistone from the time of his death until judgment, funeral and burial expenses, and court costs. Messina did not challenge the government's calculations. Instead, he argued that the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A, did not contemplate an award of lost future income to a deceased victim. The district court concluded otherwise and awarded Pistone's family $112,324.30 for income lost between 1992 and 2013 as a result of the felony murder that took his life. See 18 U.S.C. § 3663A(a)(2) (stating

12

that in case of deceased victim, "representative of the victim's estate, another family member, or any other person appointed as suitable by the court, may assume the victim's rights under this section"). The amount was based on tax records indicating that Pistone's average declared annual income for the three years prior to his murder was $5,105.65. The court further awarded $5,225 in funeral expenses, $2,990 in burial expenses, and $72 in court transcript costs, for a total restitution award of $120,611.30.

This timely appeal followed.

## II. Discussion

### A. Messina's Sentencing Challenge

We review a district court's sentence for reasonableness, see Kimbrough v. United States, 552 U.S. at 90–91, "a particularly deferential form of abuse-of-discretion review" that applies to both the terms of a sentence (substantive reasonableness) and the procedures used to arrive at the sentence (procedural reasonableness), United States v. Cavera, 550 F.3d 180, 188–89 & n.5 (2d Cir. 2008) (en banc); accord United States v. Mazza-Alaluf, 621 F.3d 205, 213 (2d Cir. 2010). Here, Messina argues that his 18-year sentence—two years below his 20-

year Guidelines range—was both procedurally and substantively unreasonable. We are not persuaded.

### 1. Procedural Error

Messina asserts that his sentence is procedurally unreasonable because it rests on errors of law and fact in the district court's rejection of the government's Rule 11(c)(1)(B) recommendation of a 10-year sentence. See generally United States v. Johnson, 567 F.3d 40, 51–52 (2d Cir. 2009) (stating that court commits procedural error if it "rests its sentence on a clearly erroneous finding of fact" or commits "an error of law in the course of exercising discretion," including error "in determining . . . the availability of departure authority" from Sentencing Guidelines (internal quotation marks and emphasis omitted)); United States v. Cavera, 550 F.3d at 190. Specifically, he argues that the district court misconstrued commentary to U.S.S.G. § 6B1.2(b)(2)(A) to preclude acceptance of the government's recommendation and failed to recognize that there were good reasons to think that the government would not have been able to prove the alleged homicidal predicate acts beyond a reasonable doubt at trial.

In addressing these arguments, we begin with two observations. <u>First</u>, as the district court correctly recognized, and as Messina concedes, the government's Rule 11(c)(1)(B) recommendation was not binding on the sentencing judge. While Messina suggests that it would wreak havoc with plea bargaining for courts not to accept 11(c)(1)(B) recommendations, the critical distinction between an 11(c)(1)(B) sentencing recommendation and an 11(c)(1)(C) sentencing agreement is that the latter is binding on a court that accepts the agreement, while the former is not. Messina clearly acknowledged at his plea allocution that the district court would not be bound by the government's 11(c)(1)(B) recommendation. Thus, to the extent he grounds his reasonableness challenge in disappointed expectations, he fails to demonstrate any entitlement supporting a claim of procedural error. <u>Second</u>, as the district court also correctly acknowledged, it was not bound by the Sentencing Guidelines, including Guideline § 6B1.2(b)(2)(A) and its commentary. The court was required only to consider the Guidelines among the many sentencing factors listed in 18 U.S.C. § 3553(a). <u>See</u> <u>United States v. Jones</u>, 460 F.3d 191, 194 (2d Cir.

2006).[5]   It is against this background that we consider the district court's reference to U.S.S.G. § 6B1.2(b) and its commentary in rejecting the government's sentencing recommendation.

The record convincingly shows that the district court's reason for rejecting the government's 10-year sentencing recommendation was not any perceived limitation on its departure authority implied from § 6B1.2(b)(2)(A) commentary but, rather, the court's own independent assessment of the sentence required by the totality of factors listed in 18 U.S.C. § 3553(a).   As the court stated on November 8, 2013, it was the "very significant role played by Mr. Messina in many serious crimes . . . under the auspices of organized crime" that "call[ed] for a sentence significantly above the government's recommended sentence of 120 months."  Tr., Nov. 8, 2013, at 9.  The district court reiterated this reason on April 4, 2014, emphasizing the loss of human life resulting from Messina's racketeering conspiracy.  It explained that "a substantial sentence" of 18 years' incarceration

---

[5] Because § 6B1.2(b)(2) is a policy statement, it was not mandatory even before the Supreme Court's Booker decision.  See United States v. Anderson, 15 F.3d 278, 283–84 (2d Cir. 1994); accord United States v. Cohen, 99 F.3d 69, 70–71 (2d Cir. 1996).

was "necessary in light [of] Mr. Messina's long and at times violent and deadly dedication to a life of crime with the Bonanno organized crime family. Mr. Messina did not just amass money for the Bonanno family, but his decisions led to the loss of human life, leaving behind devastated family and friends of the victims." Tr., Apr. 4, 2014, at 55–56. The district court's detailed discussion of facts supporting its assessment of the seriousness of Messina's criminal conduct leaves us with no doubt that it would have rejected the recommended 10-year sentence and imposed the challenged 18-year term without regard to § 6B1.2(b)(2)(A) and its commentary. See generally United States v. Sanchez, 517 F.3d 651, 665 (2d Cir. 2008) (upholding sentence where record "indicate[s] clearly that the district court would have imposed the same sentence" even without alleged procedural error).

Indeed, we understand the district court to have referenced § 6B1.2(b)(2)(A) and its commentary only to demonstrate that the Guidelines afforded no support for the urged 10-year sentence. It observed that while § 6B1.2(b)(2) recognizes a district court's discretion to accept a Rule 11(c)(1)(B) recommendation outside the applicable Guidelines range "for justifiable

17

reasons," that Guideline's commentary cautions that a justifiable reason does not arise "merely because of the defendant's decision to plead guilty to the offense or to enter a plea agreement with respect to the offense." See supra n.2.

Messina argues that the district court misconstrued this commentary as a categorical bar when, in fact, the word "merely" signals that a guilty plea or plea agreement can be accompanied by circumstances presenting justifiable reasons for accepting a recommended Guidelines departure. Even if we were to adopt Messina's construction, we are not persuaded that the district court overlooked the possibility of such circumstances either generally or specifically as to this case. Rather, the district court (1) reasonably construed the government's sentencing recommendation "to be based exclusively on the fact that Mr. Messina agreed to plead guilty," Tr., Nov. 8, 2013, at 10; and (2) correctly recognized that the Guidelines commentary expects something more to support a recommended departure, particularly one as large as that urged in this case.

In challenging the first conclusion, Messina argued in the district court, as he does on appeal, that the government's sentencing recommendation was based on more than his guilty plea or plea agreement, specifically, on the

18

government's avoidance of a significant risk that, at trial, it would fail to prove the predicate acts pertaining to Pistone's murder and Maniscalco's attempted murder. The district court was not persuaded, observing that, in every guilty plea, the parties evaluate the risks of trial, with "the government weighing the risk that it could lose," and "the defense weighing the risk that he or she could be convicted." Tr., Apr. 4, 2014, at 49. In sum, the district court did not construe § 6B1.2(b)(2)(A) commentary to dictate that guilty pleas and plea agreements can <u>never</u> arise in circumstances presenting justifiable reasons for a Guidelines departure. Rather, it concluded only that every guilty plea is informed to some degree by the risks of acquittal or conviction and that nothing <u>in this case</u> indicated that the government's avoidance of risk presented extraordinary circumstances providing a "justifiable reason" to accept a sentencing recommendation of half the effective Guidelines range.

Notably, the government's letter making its Rule 11(c)(1)(B) recommendation supports the district court's view that Messina's guilty plea presented no "unique" circumstances. Tr., Apr. 4, 2014, at 49. Nowhere in its letter did the government assert that Messina's guilty plea allowed it to avoid an

19

unusually high risk of acquittal at trial. Rather, it stated that, but for the plea agreement, "the government would have been faced with the risk of trial, which in all cases includes the possibility of adverse verdicts on one or more counts of the indictment." Prosecution Letter, Nov. 7, 2013, at 1 (emphasis added). We thus identify no procedural error in the district court's conclusion that Guideline § 6B1.2(b)(2)(A) commentary lent support to its own independent decision not to follow the government's sentencing recommendation in this case.

Insofar as Messina argues that the prosecution's critical trial witnesses would have faced serious credibility challenges, we identify no error or abuse of discretion in the district court's failure to identify this as a "justifiable reason" for the recommended sentence. Not only does the government dispute that it would have called one of these witnesses at trial, but also the district court itself heard two of these witnesses, Michael Bitz and Albert Guido, testify at the Fatico hearing and credited their testimony that Messina recruited and armed Bitz to kill Maniscalco; that Bitz, in fact, shot Maniscalco in the back of the head with the firearm Messina provided; and that Messina reprimanded Bitz upon learning that Maniscalco had survived the shooting.

20

Messina challenges the district court's favorable credibility assessment of these two witnesses, pointing to conflicts in their testimony. Mindful of the district court's significant advantage in seeing the witnesses testify, we review its credibility finding only for clear error, which we do not identify here. See United States v. Iodice, 525 F.3d 179, 185 (2d Cir. 2008). The law affords a factfinder considerable discretion in resolving evidentiary inconsistencies. Inconsistency may prompt a factfinder to reject both versions of an account, or to accept one over the other based on a finding that one witness's recollection is more reliable or credible than the other. Moreover, a factfinder who determines that a witness has been "inaccurate, contradictory and even untruthful in some respects" may nevertheless find the witness "entirely credible in the essentials of his testimony." United States v. O'Connor, 650 F.3d 839, 855 (2d Cir. 2011) (internal quotation marks omitted); United States v. Coté, 544 F.3d 88, 99 (2d Cir. 2008) (holding that factfinder can resolve conflicts in witnesses' testimony by rejecting extremes and concluding that truth lies "somewhere in between"). Here, the district court acted well within its discretion in crediting Bitz's and Guido's testimony implicating Messina in the attempted murder of Maniscalco. Indeed,

21

the court carefully explained its credibility finding, citing, among other things, (1) its assessment of each witness's demeanor; (2) its recognition that the witnesses were describing their own criminal conduct, of which they had direct knowledge; and (3) its determination that the witnesses were consistent on the most critical facts implicating Messina, while any inconsistencies were collateral and to be expected given the passage of time. On this record, we identify no clear error in the district court's decision to credit these witnesses.

Further, in these circumstances, Messina cannot demonstrate abuse of discretion in the district court's failure to identify a high risk that a jury would not have believed these witnesses, thereby justifying a sentence half Messina's Guidelines range.

Nor does the unpublished opinion in United States v. Vigil, No. CR 04-0444, 2005 WL 3662908 (D.N.M. Nov. 16, 2005), cited by Messina, support his claim of Guidelines error. To the contrary, the district court there acknowledged that "problems with the United States' case might not be an appropriate ground for departure under the Guidelines." Id. at *4 (emphasis added). What the court there concluded was that problems of proof could be considered under

22

18 U.S.C. § 3553(a) in making a <u>Booker</u>-sanctioned determination to vary from the Guidelines. <u>See</u> <u>id.</u> Nothing in the record here indicates that the district court, which specifically acknowledged that it was not bound by the Guidelines and which meticulously detailed a host of § 3553(a) factors, did not recognize its authority to vary from the Guidelines based on the totality of circumstances. Indeed, the district court exercised that authority in imposing a non-Guidelines sentence. We identify no error or abuse of discretion in its failure to vary further based on purported credibility problems confronting the prosecution at trial. <u>See generally</u> <u>United States v. Fernandez</u>, 443 F.3d 19, 32 (2d Cir. 2006) (holding that appellate court generally will not second-guess weight district court assigns factors possibly relevant to sentencing).

Insofar as Messina also argues procedural error in the district court's review of an eight-minute video retrospective of Pistone's life, his failure to object to the video in the district court limits our review to plain error. <u>See</u> <u>United States v. Marcus</u>, 560 U.S. 258, 262 (2010) (stating that plain error requires showing of (1) error, (2) that is clear or obvious, (3) affecting "appellant's substantial rights, which in the ordinary case means . . . affect[ing] the outcome

23

of the district court proceedings," and (4) seriously affecting "fairness, integrity or public reputation of judicial proceedings" (internal quotation marks omitted)).

Messina cannot demonstrate plain error here because, as he acknowledges, 18 U.S.C. § 3771(a)(4) gives victims' family members the right "to be reasonably heard" at sentencing. District courts have broad discretion both as to the type of information they may consider in imposing sentence and the source from which that information derives. See 18 U.S.C. § 3661; United States v. Broxmeyer, 699 F.3d 265, 268–69 (2d Cir. 2012); United States v. Duverge Perez, 295 F.3d 249, 254 (2d Cir. 2002). This court has never held that district courts cannot allow victims' family members to be "heard," in whole or in part, through a video presentation. Cf. United States v. Whitten, 610 F.3d 168, 189 (2d Cir. 2010) (upholding district court's decision to allow prosecution to submit video evidence relating to murder victims to be submitted to jury in capital case). Thus, Messina can hardly demonstrate plain procedural error in the district court's review of a video presentation here. Moreover, Messina fails to show that the video presentation here crossed the line from being moving—which is to be expected when family members discuss a murdered relative—to being inflammatory, thereby

24

implicating the defendant's right to due process. See generally Payne v. Tennessee, 501 U.S. 808, 831–32 (1991) (O'Connor, J., concurring) (observing, in capital case, that account of how victims' deaths affected surviving child was moving, but not so inflammatory as to deny defendant due process; murder victim need not remain "faceless stranger" at penalty phase of trial).

Accordingly, we identify no procedural error in the imposition of Messina's challenged sentence.

2.    Substantive Error

Messina asserts that his 18-year sentence is nevertheless substantively unreasonable. To prevail, he must demonstrate that the challenged sentence "cannot be located within the range of permissible decisions" available to a sentencing court. United States v. Cavera, 550 F.3d at 189 (internal quotation marks omitted). That burden is a heavy one because, in determining substantive reasonableness, this court does not attempt to identify for itself a "right" sentence; rather, we defer "to the district court's exercise of judgment" and "will set aside only those outlier sentences that reflect actual abuse of a district court's considerable sentencing discretion." United States v. Jones, 531 F.3d 163, 174 (2d

Cir. 2008) (stating that in "great majority of cases," "broad range" of sentences must be considered substantively reasonable).

The challenged 18-year sentence, two years below the effective 20-year Guideline, easily falls within the broad range of permissible decisions available to the district court. While we do not presume that a Guidelines sentence is necessarily substantively reasonable, that conclusion is warranted "in the overwhelming majority of cases," United States v. Fernandez, 443 F.3d at 27, and thus especially when, as here, a defendant challenges a below-Guidelines sentence. See United States v. Perez-Frias, 636 F.3d 39, 43 (2d Cir. 2011) (observing that it is "difficult to find that a below-Guidelines sentence is [substantively] unreasonable"); see also United States v. Rigas, 583 F.3d 108, 122–23 (2d Cir. 2009) (cautioning that review for substantive reasonableness should not be "rubber stamp," and comparing such review to that under "manifest-injustice" and "shocks-the-conscience" standards (internal quotation marks omitted)).

Messina nevertheless maintains that the district court's decision to disregard the government's sentencing recommendation and to impose a prison

term nearly double what the government thought was appropriate indicates a decision well outside the range of reasonable sentencing discretion. We disagree. Sentencing responsibility is committed to the judicial, not the executive, branch of government. A prosecutor's sentencing recommendation—and especially a non-binding Rule 11(c)(1)(B) recommendation that is half the Guidelines range— does not automatically reset the boundaries for what is a reasonable exercise of judicial sentencing discretion. Certainly, it did not do so in this case.

As the district court observed, Messina's racketeering crime of conviction resulted in the loss of one human life and the effective destruction of another. Messina reasonably could have foreseen murder in the former instance and actively solicited murder in the latter. Messina's racketeering also spanned a lengthy period of time, with loansharking and gun trafficking continuing to within a few years of his prosecution. His criminal activities were conducted, moreover, under the auspices of the dangerous and violent Bonanno crime family. In these circumstances, we conclude that the district court acted well within its sentencing discretion in rejecting the government's 10-year sentencing

27

recommendation and that its choice of a below-Guidelines sentence of 18 years was substantively reasonable.

In a further effort to avoid this conclusion, Messina faults the district court's concern with sentencing disparity, noting that many confederates in fact received lesser sentences. The point need not detain us long. We understand the district court's disparity observations to have focused more on perceived inconsistency in the prosecution's sentencing positions among related cases rather than on its own imposition of disparate sentences. In any event, disparity is a relevant, but not controlling, sentencing factor. See United States v. Florez, 447 F.3d 145, 158 (2d Cir. 2006) (observing that "weight to be given [sentencing] disparities, like the weight to be given any § 3553(a) factor, is a matter firmly committed to the discretion of the sentencing judge"); see also United States v. Fernandez, 443 F.3d at 32. The district court acted well within its discretion in affording the most sentencing weight to the nature of Messina's crime, its homicidal consequences, and his longstanding participation in organized crime, and in concluding therefrom that an 18-year prison term was the appropriate sentence.

Accordingly, we conclude that Messina's sentence is both procedurally and substantively reasonable.

B.     <u>Restitution</u>

Messina argues that the MVRA did not authorize the district court to order restitution for income that Pistone may have lost as a result of his death. We review a district court's restitution order for abuse of discretion, which we will identify only if the order "rests on an error of law, a clearly erroneous finding of fact, or otherwise cannot be located within the range of permissible decisions." <u>United States v. Thompson</u>, 792 F.3d 273, 277 (2d Cir. 2015) (internal quotation marks omitted). Where, as here, a defendant maintains that there has been an error in construing applicable law, we review that legal question <u>de novo</u>. <u>See</u> <u>United States v. Marino</u>, 654 F.3d 310, 316 (2d Cir. 2011).

Our review necessarily begins with the language of the MVRA because we assume that "the ordinary meaning of that language accurately expresses" Congress's intent. <u>Gross v. FBL Fin. Servs., Inc.</u>, 557 U.S. 167, 175 (2009) (internal quotation marks omitted). Thus, we first consider "whether the language at issue has a plain and unambiguous meaning with regard to the particular

dispute in the case." Roberts v. Sea-Land Servs., Inc., 132 S. Ct. 1350, 1356 (2012) (internal quotation marks omitted). If it does, that meaning controls without need for further inquiry. See Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997); Hedges v. Obama, 724 F.3d 170, 189 (2d Cir. 2013). In making that determination, we do not construe critical statutory language in a vacuum, see Roberts v. Sea-Land Servs., Inc., 132 S. Ct. at 1356, but rather, in context, both "the specific context in which that language is used, and the broader context of the statute as a whole," Robinson v. Shell Oil Co., 519 U.S. at 341; see Utility Air Regulatory Grp. v. EPA, 134 S. Ct. 2427, 2442 (2014); Hedges v. Obama, 724 F.3d at 189.

Applying these principles here, we conclude that the language of 18 U.S.C. § 3663A(b)(2)(C) authorizes restitution to all victims of qualifying offenses resulting in bodily injury, both those who survive those injuries and those who die therefrom. Further, the MVRA's lost income provision applies to future income lost as a result of the offense of conviction. The three of our sister circuits to have considered this issue have all reached the same conclusions. See United States v. Serawop, 505 F.3d 1112, 1118–21, 1123–25 (10th Cir. 2007) (holding that

30

MVRA authorizes restitution award of lost future income to deceased infant victim of voluntary manslaughter); <u>United States v. Cienfuegos</u>, 462 F.3d 1160, 1163–69 (9th Cir. 2006) (holding that plain language of MVRA contemplates restitution award to deceased victim for lost future income resulting from involuntary manslaughter); <u>United States v. Oslund</u>, 453 F.3d 1048, 1062–63 (8th Cir. 2006) (holding that because future income is income lost to deceased victim as direct result of murder and armed robbery crimes of conviction, plain language of statute leads to conclusion that lost future income can be included in restitution order).

The MVRA, enacted in 1996, mandates restitution in specified circumstances, notably, for purposes of this case, when a defendant stands convicted of "a crime of violence . . . in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1)(A)(i), (B). Messina does not dispute that he was convicted of a crime of violence. Nor is there any question that in the course of the armed robbery predicate, Pistone suffered a physical injury that caused his death.

31

Four conjunctive statutory provisions detail the restitution required by the MVRA, see id. § 3663A(b)(1)–(4), two of which are relevant here:

(b) The order of restitution shall require that such defendant--

. . .

(2) in the case of an offense resulting in bodily injury to a victim--
(A) pay an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care, including nonmedical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;
(B) pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and
C) reimburse the victim for income lost by such victim as a result of such offense;

(3) in the case of an offense resulting in bodily injury that results in the death of the victim, pay an amount equal to the cost of necessary funeral and related services, and . . . .

Id. § 3663A(b)(2)–(3). [6]

Messina argues that § 3663A(b)(2)(C)—requiring reimbursement for lost income—is ambiguous as to whether it includes "lost _future_ income,"

_____

[6] The other two provisions provide for restitution of lost or destroyed property, see 18 U.S.C. § 3663A(b)(1), and for the reimbursement of expenses incurred to participate in the investigation or prosecution of a case, or to attend related court proceedings, see id. § 3663A(b)(4).

particularly in cases of deceased victims. Def.'s Br. 57 (emphasis in original). He submits that use of the backward looking term "reimburse" signals Congress's intent to remedy only "an existing harm, not a future harm." Id. at 59. In short, Messina appears to argue that where a violent crime results in death, the deceased victim can no longer earn, and therefore has not "lost" any income for which he can be "reimburse[d]" or "paid back." Id. This reasoning is unconvincing because the same might be said of a physically injured victim who is permanently incapacitated or, at least for a while, of a temporarily incapacitated victim.

Because the MVRA does not define "income lost," we assume Congress intended for the term to be given its ordinary meaning. See FCC v. AT&T Inc., 562 U.S. 397, 403 (2011). As the Ninth Circuit has observed, lost income is regularly understood in various legal contexts to encompass future income. See United States v. Cienfuegos, 462 F.3d at 1165–66 & nn.1–2 (collecting cases construing federal and state wrongful death and survival statutes, as well as state criminal restitution statutes, to allow recovery for lost future income). Moreover, such income can be lost both when there is death and when there is

33

disability. See Black's Law Dictionary 621 (10th ed. 2014) (defining "lost earnings" as "[w]ages, salary, or other income that a person could have earned if he or she had not lost a job, suffered a disabling injury, or died" (emphasis added)). Because the common meaning of lost income is thus understood to encompass future income lost from death or injury, we conclude that the reference to "income lost" in § 3663A(b)(2)(C) bears that meaning. That conclusion is consistent, moreover, with the MVRA's express mandate for restitution "in the full amount of each victim's losses." 18 U.S.C. § 3664(f)(1)(A); see also S. Rep. No. 104-179, at 12 (1995), reprinted in 1996 U.S.C.C.A.N. 924, 925 (Dec. 6, 1995) (stating that MVRA was enacted to improve administration of federal criminal justice "by requiring Federal criminal defendants to pay full restitution to the identifiable victims of their crimes"). Indeed, in most circumstances, the income lost as a result of physical injury will be future income as the injury will preclude the victim—whether for a time or permanently— from continued gainful employment. Only rarely will injury prevent a victim from collecting income already earned.

To be sure, a restitution award, whether for lost income or otherwise, cannot be based on mere speculation. See United States v. Cienfuegos, 462 F.3d at 1168; see also S. Rep. No. 104-179, at 19, reprinted in 1996 U.S.C.C.A.N. at 932 (stating committee view that mandatory restitution should not apply where "losses are speculative" or "not clearly causally linked to the offense"). No such concern arises in this case because the district court conservatively calculated lost future income by reference to Pistone's modest recent taxable earnings, and Messina did not, and does not now, object to that calculation.

The statutory language requiring a causal link between a victim's lost income and a defendant's qualifying offense also supports construing lost income to include future income without regard to whether the victim survives his injuries. The MVRA mandates restitution "for income lost by such victim [i.e., the victim of an offense causing him bodily injury] as a result of such offense." 18 U.S.C. § 3663A(b)(2)(C) (emphasis added). Our sister circuits have recognized, and we agree, that "future income is income that is lost to the victim as a direct result of the crime" causing bodily injury. United States v. Oslund, 453 F.3d at 1063; accord United States v. Serawop, 505 F.3d at 1122 (quoting

35

Oslund in reaching same conclusion); see United States v. Cienfuegos, 462 F.3d at 1164 (construing "as a result" clause in § 3663A(b)(2)(C) as "forward looking"). Messina's crime caused Pistone to suffer a "bodily injury" that ended his life. Insofar as Pistone will thus never work another day, he has "lost" future income "as a result of" the offense of conviction as much as a victim who has suffered a non-fatal bodily injury that will prevent him from ever working again.

In urging otherwise, Messina argues that other subprovisions of § 3663A(b)(2) demonstrate that Congress did not intend for lost future income to be included in a restitution order to a deceased victim. Specifically, he maintains that the medical and therapeutic expenses for which restitution must be ordered under § 3663A(b)(2)(A)−(B) can only be incurred by a live victim. Thus, Congress's § 3663A(b)(2)(C) provision for lost income restitution must similarly compensate only live victims. We are not persuaded. The fact that victims can incur certain costs, the operative restitution term in § 3663A(b)(2)(A)−(B), only while they are alive does not mean that only live victims can sustain loss, the

focus of § 3663A(b)(2)(C) restitution.[7] As noted earlier, there may be cases in which the income lost by a deceased victim is too speculative to support a restitution award, but where, as here, no such concern arises, we conclude that § 3663A(b)(2)(C) provides for all discernible income lost as a result of the defendant's offense—including future income—to be included in a restitution order for a deceased victim of a defendant's violent crime.

No different conclusion is warranted by the fact that § 3663A(b)(3) references restitution only of funeral and related expenses when a victim's bodily injury causes death. The statute's four restitution provisions are conjunctive, not disjunctive. See supra at 32−33 (quoting statute); United States v. Serawop, 505 F.3d at 1119−20 (rejecting disjunctive interpretation of § 3663A(b)'s restitution provisions). Thus, a crime victim is not limited to restitution under any one provision but, rather, may be awarded relief under every provision for which he qualifies. Thus, if the victim does die, § 3663A(b)(3) provides for the restitution award to include funeral and related expenses in addition to any other award of

_____

[7] Nothing in § 3663A(b)(2)(A) suggests that it would not apply to a victim who died as a result of the offense, if the victim incurred ambulance or hospital costs before succumbing to his injuries.

37

costs or losses warranted in the case. See United States v. Oslund, 453 F.3d at

1062 (recognizing when offense causes bodily harm to victim, restitution must be

ordered for medical and therapeutic expenses as well as lost income, and if

victim dies, "funeral and related expenses are also included").

To read the statute more narrowly, as Messina urges, would yield the

perverse result of allowing a defendant who successfully kills his victim to pay

less restitution for lost income than a defendant whose victim survives the attack.

It is no answer to say that a surviving victim needs support that a deceased

victim does not. Injured victims—whether living or dead—may have lost

income as a result of defendant's offense that they would use to support

dependents. A defendant cannot argue that he need pay lost income restitution

only to an injured father of four whom he maims but not to a similarly obligated

father whom he kills. See United States v. Cienfuegos, 462 F.3d at 1164 ("It

would be illogical to assume that the ultimate death of a person who suffered

bodily injury eliminates restitution for lost income. To not award restitution for

future lost income would lead to a perverse result where murderers would be

liable for markedly less in restitution than criminals who merely assault and

injure their victims."). As the Supreme Court has cautioned, "interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 575 (1982); see SEC v. Rosenthal, 650 F.3d 156, 162 (2d Cir. 2011). Here, a non-absurd interpretation is not only available, it is compelled by the plain meaning of the statutory text.

Thus, we construe the lost-income provision of the MVRA, 18 U.S.C. § 3663A(b)(2)(C), to apply to any victim of an offense resulting in bodily injury, whether the victim survives the injury or dies therefrom. We further construe the lost-income provision to mandate restitution for non-speculative future income lost as a result of a defendant's offense.

Accordingly, we identify no error in the district court's award to Pistone's family of income lost to the victim as a result of the robbery conspiracy offense that took his life. Nor do we identify abuse of discretion in the district court's decision not to waive interest on the ordered restitution during Messina's 18-year sentence given Messina's substantial property holdings. See 18 U.S.C. § 3612(f)(3) (court "may" waive restitution interest requirement "[i]f the

39

court determines that the defendant does not have the ability to pay interest"). Although Messina argues that the district court's decision not to impose a fine based on his inability to pay is inconsistent with its decision to allow for interest, the district court satisfactorily explained that its decision not to impose a fine was based, in part, on a desire for restitution, and presumably the interest attending it, to "have a priority." Tr., Apr. 4, 2014, at 44. This was a reasonable treatment of Messina's legal obligation in light of his assets.

## III.  Conclusion

To summarize, we hold as follows:

(1)    Messina's below-Guidelines 18-year sentence for racketeering conspiracy is neither procedurally nor substantively unreasonable because:

(a)    the district court acted within its discretion in rejecting the government's non-binding 10-year sentencing recommendation, see Fed. R. Crim. P. 11(c)(1)(B), based on the nature of Messina's crime, which included both foreseeable felony murder and attempted murder, his longstanding participation in the Bonanno crime family, and his ongoing loansharking and firearms trafficking;

(b)     the district court did not misconstrue commentary to U.S.S.G. § 6B1.2(b) in concluding that, in the circumstances of this case, Messina's guilty plea and plea agreement did not provide justifiable reasons for imposing a sentence half the effective 20-year Guidelines range; and

(c)     an 18-year prison term falls within the range of reasonable sentencing choices available to the district court in this case.

(2)     Because we construe the MVRA's lost income provision, <u>see</u> 18 U.S.C. § 3663A(b)(2)(C), to apply (a) to any victim who has sustained bodily injury as a result of a defendant's qualifying offense, including one who dies from his injury; and (b) for any income lost as a result of such offense, including future income, we conclude that the district court here acted within its discretion in ordering restitution with interest for income lost by Pistone as a result of the armed robbery offense that ended his life.

Accordingly, the district court's judgment of conviction is AFFIRMED.

41